## PEOPLE v SMALLS

1. CRIMINAL LAW—DEFENSES—MISTAKEN IDENTIFICATION—WITNESSES
—CREDIBILITY—ALIBI—JURY QUESTION.

Claims by a defendant in a criminal case of mistaken identifica-
tion and alibi are claims which deal with the credibility of
witnesses and generally are to be decided by the jury.

2. CRIMINAL LAW—APPEAL AND ERROR—JURY—EVIDENCE—VERDICT.

An appellate court will not disturb a conviction by a jury where
sufficient evidence which may be believed by the jury exists to
sustain a verdict of guilty beyond a reasonable doubt.

3. CRIMINAL LAW—EVIDENCE—REBUTTAL EVIDENCE—ADMISSIBILITY—
DISCRETION.

It is within a court's discretion to allow the prosecution to
present evidence as rebuttal evidence where the evidence could
have been offered before the prosecution rested its case in chief.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPEAL AND ERROR.

Instructions to the jury in a criminal case must be reviewed as a
whole.

5. CRIMINAL LAW—RIGHT TO COUNSEL—PHOTOGRAPHIC IDENTIFICA-
TIONS—CUSTODY—LINE-UPS.

Photographs of an accused person may not ordinarily be dis-
played to witnesses where the accused is known to be in
custody or can be readily produced for a line-up; an accused is
entitled to an opportunity to request and obtain counsel if such
a photographic showing occurs.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 136.
   58 Am Jur, Witnesses § 862.
[2] 5 Am Jur 2d, Appeal and Error §§ 821, 838, 959.
[3] 29 Am Jur 2d, Evidence §§ 250, 269.
[4] 4 Am Jur 2d, Appeal and Error § 535.
[5] 21 Am Jur 2d, Criminal Law §§ 313, 314, 368, 369.
   Accused's right to counsel under the Federal Constitution—Su-
   preme Court cases. 2 L ed 2d 1646, s. 9 L ed 2d 1260.
[6] 29 Am Jur 2d, Evidence § 785 *et seq.*

6. Criminal Law—Evidence—Identification—Photographic Show-
    Up—Taint of Error—Burden of Proof.

   The test for determining whether an identification of a criminal
   defendant at trial is free from the taint of error of a prior
   illegal photographic show-up is whether the trial identification
   was arrived at by exploitation of the prior illegality or by
   means sufficiently distinguishable from the prior illegality to be
   purged of the taint of error; the prosecution has the burden of
   proving that the trial identifications were free from the taint of
   the prior illegal proceeding.

Appeal from Kent, Roman J. Snow, J. Submitted
Division 3 April 9, 1975, at Grand Rapids. (Docket
No. 17626.) Decided May 27, 1975. Leave to appeal
applied for.

Nathaniel L. Smalls was convicted of uttering
and publishing a forged instrument. Defendant
appeals. Remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James K. Miller,*
Prosecuting Attorney, *Donald A. Johnston III,*
Chief Appellate Attorney, and *Craig S. Neckers,*
Assistant Prosecuting Attorney, for the people.

*Gillis & LaRose,* for defendant.

Before: T. M. Burns, P. J., and McGregor and
D. F. Walsh, JJ.

T. M. Burns, P. J. Defendant Nathaniel Smalls
was convicted by a jury on April 5, 1973, of utter-
ing and publishing. MCLA 750.249; MSA 28.446.
On July 5, 1973, he was sentenced to 2 to 14 years
imprisonment and now appeals.

On September 22, 1972, Mrs. Shirley Rockwell, a
drive-in teller at the Plainfield Branch of Old Kent
Bank, was presented with a cashier's check drawn
on the Bank of the Commonwealth in Detroit. The

person who presented the check also gave Mrs. Rockwell a temporary driver's license and an Old Kent savings passbook, both in the name of Charles Bowman. After approval was secured from the branch manager, the check was cashed. Both Mrs. Rockwell and the assistant manager, Mr. Fred Gaul, who observed the transaction, were able to identify defendant as the person who presented the check.

Approximately two hours later, Mr. John Lutz, an assistant manager of the Breton Street Branch of the Old Kent Bank, was presented with another check drawn on the Bank of the Commonwealth. A temporary driver's license and Old Kent savings passbook were also produced. Mr. Lutz informed the person who presented the check that it could not be cashed and this person, later identified as Ernest Lee, left the bank and got into the passenger side of an automobile being driven by defendant. This vehicle left the bank at a high rate of speed, pursued by police officers who were responding to a bank alarm.

After a high speed chase, Lee and defendant were apprehended. In the car was a total of $2,095 in currency, 68 forged Commonwealth Bank checks made payable to Charles Bowman, as well as a temporary driver's license, social security card and an Old Kent savings passbook, all in the name of Charles Bowman. Another set of license plates were also found in the trunk of the vehicle.

Defendant was initially arrested and charged with uttering the check at the Breton Street Branch. He had an attorney representing him who had been in contact with detective Milo Schuiteman, the officer in charge of the investigation of the counterfeit checks.

On October 21, 1972, detective Schuiteman, in-

vestigating the possibility of defendant and Lee being involved in the Plainfield check passing, went to the Plainfield Branch and interviewed Mrs. Rockwell. He showed her nine photographs, three of Lee, three of the defendant and single photographs of persons 19, 20 and 30 years of age. Mrs. Rockwell recognized the defendant in at least one of the photos. Defendant's attorney was not advised of this photographic show-up.

Mrs. Rockwell described the check-passer as a clean-shaven male Negro between 25 and 30 years of age. The assistant manager who approved the check for cashing described the check-passer as light-skinned, beardless and in his lower thirties. According to police photographs taken of the defendant three or four hours later, he had a full beard and moustache and his skin was medium to dark in color.

Fingerprint testimony produced at trial was conflicting. The Grand Rapids Police Department fingerprint expert was unable to identify any of the prints on the various exhibits as belonging to defendant. However, although admitting some mistakes in identifying some fingerprint characteristics, a state police fingerprint expert opined that a latent print raised from the check in question matched that of defendant's right thumb print.

Ernest Lee testified at trial that he and defendant arrived in Grand Rapids at 11:30 a.m., at which time they split up, Lee not seeing defendant again until 1:30 or 2 p.m. At this time, they went to the Breton Street Branch of the Old Kent Bank where Lee attempted to pass one of the counterfeit checks.

Defendant took the stand in his own behalf and testified that on the morning of the 22nd, he and Lee had arrived in Grand Rapids around 11:30

a.m. Defendant said that he then met a business acquaintance and was with him for 1-1/2 to 2 hours. The acquaintance, Virgil Stowe, corroborated the defendant's alibi.

Over objection as to relevancy, the prosecutor asked defendant if he had been in any bank within the City of Grand Rapids on September 22, 1972. Defendant denied that he had.

After defendant rested, the prosecutor called two rebuttal witnesses who testified that defendant was in another branch of the Old Kent Bank while Ernest Lee cashed a check drawn on the Bank of the Commonwealth. Defendant's objection to this testimony on the grounds that it was not proper rebuttal and that it tended to show defendant's involvement in another crime was overruled by the trial court.

On appeal defendant first contends that the evidence produced at trial was insufficient to support a finding of guilty beyond a reasonable doubt. Defendant argues that the identification by the teller and the assistant manager of the bank should not have been believed and that, in light of the testimony of his alibi witness, the evidence was insufficient. Claims of mistaken identification by a witness and alibi are matters which deal with the credibility of witnesses and such questions are generally to be decided by the jury. *People v Boynton,* 46 Mich App 748; 208 NW2d 523 (1973), *People v Hughes,* 26 Mich App 355; 182 NW2d 631 (1970). After listening to all the testimony and observing the demeanor of the witnesses, the jury chose to disbelieve defendant. We shall not substitute our judgment for theirs.

Furthermore, where sufficient evidence exists, which may be believed by the jury, to sustain a verdict of guilty beyond a reasonable doubt, the

decision of the jury should not be disturbed by an appellate court. *People v Palmer,* 392 Mich 370; 220 NW2d 393 (1974), *People v Boynton, supra, People v Stewart,* 36 Mich App 93; 193 NW2d 184 (1971). Our review of the record in the case at bar reveals ample evidence, if believed, to warrant a jury verdict of guilty of the crime charged.

Defendant next claims that the trial court's admission of the rebuttal testimony was an abuse of discretion. Defendant's argument is that the rebuttal testimony was not properly admissible after the defense had rested, since it should have been offered by the prosecution during its case in chief as evidence of a plan or scheme of the defendant.

In *People v Atkins,* 58 Mich App 503, 506; 228 NW2d 435 (1975), this Court said:

" 'Rebuttal evidence is broadly defined as that given by one party to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same. In practical application the line of demarcation between rebuttal evidence and that which should properly be given in chief before the prosecution rests is frequently more or less obscure, and it is a general rule that whether evidence which could have been offered before resting may be given in rebuttal is a matter within the discretion of the trial court.' *People v DeLano,* 318 Mich 557, 570; 28 NW2d 909, 914 (1947), *quoting from People v Utter,* 217 Mich 74; 185 NW 830 (1921)."

The testimony in the case at bar did rebut the defendant's alibi defense and, therefore, was within the scope of rebuttal evidence and within the trial court's discretion to allow. No abuse of discretion by the trial court being present, reversal is not required.

Defendant next asserts that the trial court erro-

neously instructed the jury on the issue of reasonable doubt, relying on *People v Davies,* 34 Mich App 19; 190 NW2d 694 (1971). The error in *Davies* was charging the jury that a reasonable doubt could not be based upon a lack of evidence or upon the unsatisfactory nature of the evidence. See *People v Ames,* 60 Mich App 168; 230 NW2d 360 (1975). No such instruction was given in the case at bar and, therefore, we find no error. Furthermore, this Court has consistently held that instructions to the jury must be reviewed as a whole. *People v Wright,* 58 Mich App 735; 228 NW2d 807 (1975), *People v Walter Van Turner,* 26 Mich App 211; 182 NW2d 62 (1970), *People v Weems,* 19 Mich App 553; 172 NW2d 865 (1969). After carefully reviewing the instruction in its entirety, we are convinced that the jury was properly charged on the subject of reasonable doubt.

Finally, defendant maintains error in the police showing pictures including defendant's for identification purposes to the teller and assistant manager without counsel for the defendant being present.

Relying on *People v Anderson,* 389 Mich 155, 168–169; 205 NW2d 461, 466–467 (1973), defendant argues that photographs of an accused person may not ordinarily be displayed to witnesses if defendant is known to be in custody or can be readily produced for a line-up, and if such a photographic showing occurs the accused is entitled to an opportunity to request and obtain counsel. While the defendant in this case was not in custody, he had been arrested for a similar offense and released on bond. Therefore, he could have been readily produced for a line-up. Also, the police officer who conducted the photographic show-up knew of defendant's involvement with the forgeries in ques-

tion and also knew that defendant was represented by counsel. No reason acceptable to this Court has been provided as to why defendant's counsel was not notified of the show-up or why defendant was not produced for a line-up.

For the reasons set forth in *People v Anderson, supra,* at 168–169, 186–187, and *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), we are compelled to remand this case to the trial court for an evidentiary hearing to determine whether the teller and assistant manager's identification of the defendant has an independent source. The test for such a determination was enunciated in *Wong Sun v United States,* 371 US 471, 488; 83 S Ct 407, 417; 9 L Ed 2d 441, 455 (1963):

" '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

See also *People v John Martin,* 37 Mich App 621; 194 NW2d 909 (1972).

The burden of showing that the two witnesses' subsequent trial identifications were free from the taint of the prior photographic show-up, at which counsel was not present, shall be on the prosecution. *People v Yacks,* 49 Mich App 444; 212 NW2d 249 (1973), *People v Young,* 21 Mich App 684; 176 NW2d 420 (1970). If the trial court determines that the witnesses' identification of defendant had an independent source, the conviction shall be affirmed. However, if the trial court determines that the in-court identifications were tainted, a new trial shall be ordered. At this trial, evidence

of the pretrial photographic show-up shall be inadmissible.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction in this cause.