PEOPLE v McNEILL

1. Wɪᴛɴᴇssᴇs—Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Iᴅᴇɴᴛɪғɪᴄᴀᴛɪᴏɴ ᴏғ Dᴇғᴇɴᴅᴀɴᴛ—Pʜᴏ-
   ᴛᴏɢʀᴀᴘʜs—Lɪɴᴇᴜᴘs—Aᴛᴛᴏʀɴᴇʏ ᴀɴᴅ Cʟɪᴇɴᴛ.

   Generally, Michigan decisions specify: (1) except in exigent cir-
   cumstances, photographs of an accused known to be in custody
   or who can be readily produced for a lineup may not be shown
   to witnesses for purposes of identification; (2) a lineup cannot
   be conducted without providing a defendant with proper repre-
   sentation.

2. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Aᴛᴛᴏʀɴᴇʏ ᴀɴᴅ Cʟɪᴇɴᴛ—Cᴜsᴛᴏᴅʏ—Iᴅᴇɴᴛɪғɪᴄᴀᴛɪᴏɴ
   —Pʜᴏᴛᴏɢʀᴀᴘʜɪᴄ Sʜᴏᴡᴜᴘs—Mᴜɢ Bᴏᴏᴋs.

   The rule that a defendant is entitled to counsel at pretrial
   identification procedures does not apply to the pre-custody, pre-
   questioning, mere suspicion phase of a criminal investigation
   because it is not feasible to require appointment of counsel in
   cases of pre-custody photographic showups where there is no
   detention of the defendant since under such a rule each photo-
   graph arguably depicts a suspect and therefore each person
   whose photograph appears in the photographic display, or
   perhaps even the "mug book", would require the representation
   of counsel which would be both impossible and absurd.

---

Rᴇғᴇʀᴇɴᴄᴇs ғᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇs

[1–4] 21 Am Jur 2d, Criminal Law §§ 313, 314, 368, 369.
   Accused's right to counsel under the Federal Constitution-Supreme
   Court cases. 18 L Ed 2d 1420.
   Accused's right to assistance of counsel at or prior to arraignment.
   5 ALR3d 1269.
   Admissibility, and prejudicial effect of admission, of "mug shot",
   "rouges' gallery" photograph, or photograph taken in prison, of
   defendant in criminal trial. 30 ALR3d 908.
   Admissibility of evidence of photographic identification as affected
   by allegedly suggestive identification procedure. 39 ALR3d 1000.
[5] 5 Am Jur 2d, Appeal and Error § 611.
[6] 75 Am Jur 2d, Trial § 855.
   81 Am Jur 2d, Witnesses §§ 88–93.
[7] 29 Am Jur 2d, Evidence §§ 321, 322.
   Admissibility in prosecution for sexual offense, of evidence of other
   similar offenses. 77 ALR2d 841.

3. Criminal Law—Attorney and Client—Custody—Photographic Showups—Right to Counsel.

The mere fact that an investigation has focused on a defendant who is not in custody does not give him the right to counsel at a photographic showup.

4. Criminal Law—Photographic Identification—Pre-Custody Situations—Corporeal Lineups.

Identification by photograph may not be used in pre-custody situations where the accused can be readily produced for a corporeal lineup.

5. Witnesses—Criminal Law—Appeal and Error—Testimony of Child Witnesses—Failure to Object—Statutes.

Failure to object to the admission of the testimony of child witnesses as incompetent waives the right to assert the alleged error on appeal (MCLA 600.2163; MSA 27A.2163).

6. Witnesses—Criminal Law—Testimony of Child Witnesses—Instructions on Credibility—Weight of Testimony.

Instructions on the weight and credibility of testimony of child witnesses was adequate where both prosecution and defense counsel in opening argument directed the jury's attention toward carefully weighing the testimony of these witnesses and where the court itself gave an instruction couched particularly in terms of weighing the credibility of such young witnesses.

7. Criminal Law—Evidence—Similar Defenses—Admissibility—Prejudice—Probative Value—Statutes.

No abuse of discretion in a trial court's admission of evidence of prior sexual offenses has been shown in a trial for criminal sexual conduct where the acts were clearly similar and could serve as a positive basis for identification of the defendant and where the probative value of such acts as evidence outweighed any prejudicial effects (MCLA 768.27; MSA 28.1050).

Appeal from Washtenaw, Edward D. Deake, J. Submitted November 7, 1977, at Lansing. (Docket No. 27457.) Decided February 22, 1978.

Clifford F. McNeill was convicted of first-degree criminal sexual conduct. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Neil J. Juliar,* Assistant Prosecuting Attorney, for the people.

*Mark G. Rogow,* for defendant on appeal.

Before: QUINN, P. J., and V. J. BRENNAN and C. L. BOSMAN,* JJ.

V. J. BRENNAN, J. Defendant Clifford Floyd Mc-Neill was charged with first-degree criminal sexual conduct, contrary to MCLA 750.520(b); MSA 28.788(2). He was convicted by jury in Washtenaw County Circuit Court on November 17, 1975. On December 4, 1975, he was sentenced to prison for a term of from 15 to 25 years. Defendant appeals as of right pursuant to GCR 1963, 806.1. He requests that his conviction be reversed and the case be remanded for new trial.

The record indicates the circumstances leading to defendant's conviction occurred on May 19, 1975. While playing in a wooded field behind his house in Ann Arbor, complainant, aged 5 years, was approached by a stranger wearing a green shirt and green pants. Complainant was in the company of two friends of approximately the same age. Offering to show the three boys a tree house, the stranger enticed them to a more secluded area. He offered them ice cream and money if one of them would allow him to place his penis in the mouth. He then placed his penis in complainant's mouth; ejaculated on the child's shirt; inserted an old chair leg, the tip of which was covered by a piece of plastic, into his own anus and then discarded the chair leg and plastic. Complainant testified that the stranger walked and talked

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"funny". Defendant limped slightly from a foot operation and wore false teeth.

Shortly after the assault, the two other boys related the incident to their mother, who in turn advised complainant's mother. Complainant's mother called the police.

The police arrived at the complainant's residence at approximately 5 p.m. They interviewed the three boys, visited the scene of the crime with them and found the chair leg and piece of plastic. After obtaining a lead from another individual they encountered in the area, they drove to defendant's house, which was less than half a mile from the victim's house. They advised defendant of his *Miranda*[1] rights and asked him if he would accompany them to the police station to talk about an incident that had occurred in the neighborhood that day.

Defendant consented. Defendant was not placed under arrest. He was handcuffed as a routine precaution, but the cuffs were removed after a few minutes when he appeared uneasy. He was wearing a green shirt and bluejeans at this time. During the period between the time the police contacted defendant and the time they arrived with him at the station, defendant stated that he had changed his clothes and that he had been "skinny-dipping" in a local gravel pit, Killings Pond, at unspecified earlier points in the day.

Defendant was interviewed at the police station. He stated that he had been watching skinny-dippers and swimming at Killings Pond between 12:30 and 3:10 p.m. that day. He had returned home and worked on his bicycle and done some lawn and garden work. He denied any knowledge

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

of the incident. He was photographed and finger-printed. He was not placed under arrest.

All three boys selected defendant's picture at photographic showups conducted by the police on May 20, 1975. They later identified defendant in court as the man who committed the criminal sexual conduct.

At trial, a prosecution witness, aged 13 years, testified that one day late in April he had been walking through the same wooded area in which the complainant was assaulted. Defendant had approached him and asked him if he knew who had been pulling up construction markers the city had installed. Defendant offered the witness one dollar to try and find out who had pulled up the stakes and had taken him over near the creek to look at some stakes. He had then offered him one dollar to pull his pants down and display his genitals. The witness fled. This youth also selected defendant's picture at a photographic showup conducted by the police on May 20, 1975. He later identified defendant at trial as the man who had sexually solicited him.

A State Police Crime Laboratory scientist testified on the basis of his analysis of the semen stains found on complainant's shirt and blood and saliva samples taken from defendant. He stated that defendant was one of a group comprising about 36% of the population who could have deposited the semen on the shirt.

A *Walker*[2] hearing was held to determine the voluntariness of defendant's statements to the police that he had changed his clothing and gone "skinny-dipping" on the day in question. The voluntariness of these statements is not challenged

---

[2] *People v Walker (On Rehearing),* 374 Mich 331, 338; 132 NW2d 87 (1965).

on appeal. A *Wade*[3] hearing was held to determine the admissibility of the pretrial and in-court identification testimony.

On appeal, defendant raises several allegations of error. We will address those which merit discussion.

We must first determine whether defendant was entitled to have corporeal rather than photographic showups conducted or to have counsel present at the four pretrial photographic showups held.

Prior to trial, defendant moved to suppress evidence of photographic identification obtained at the photographic showup held without benefit of counsel prior to his arrest. A *Wade* hearing was held, the only testimony taken being from an Ann Arbor police officer and a Washtenaw County detective. Testimony of Detective Lawrence Hoffman indicated that police were led to defendant's house after the assault was reported on May 19, 1975. Several police cars arrived in front of defendant's house at the same time. Defendant did not attempt to run. He was asked his name and if he would mind accompanying the police officers to the station in order to discuss an incident that had occurred earlier in the day. Defendant consented. He was not placed under arrest and he could have refused to cooperate. Before defendant was asked to accompany the officers, he was advised of his right to an attorney and given *Miranda* warnings.

Officer William Canada interviewed defendant at the police station on the evening of May 19, 1975. He was advised that defendant had come in voluntarily and he interviewed him outside of the security area. He was not under arrest and could

---

[3] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

have left at any time. He was not in custody. Defendant did not have handcuffs on when he was interviewed. Defendant was not arrested because insufficient evidence against him existed. He was merely a suspect in the case. After the interview, Officer Canada took defendant's photograph and fingerprints. At the time defendant was advised that the photograph would be shown.

On May 20, 1975, Officer Canada separately showed defendant's photograph and seven other photographs to complainant and his two companions. All identified defendant as the man who confronted them on May 19, 1975. Officer Canada then went to the house of the 13-year-old prosecution witness on advice that the witness had been sexually accosted late in April. This witness also selected defendant's photograph as being the man who had accosted him. No attorney was present at any of these photographic identifications.

The trial court ruled that the factual question of whether defendant was in "actual custody" at the time the photograph was taken was dispositive of the propriety of the identification procedure. He held that defendant was not in custody, but had accompanied the officers to the police station voluntarily. The photograph thus was not the fruit of an illegal detention and defendant was not entitled to have counsel present at the photographic displays. The court made no separate finding regarding defendant's availability for a corporeal lineup on May 20, 1975. We will review defendant's claim of error solely on the basis of the *Wade* hearing record. *People v Kaigler,* 368 Mich 281, 288; 118 NW2d 406 (1962).

Generally, Michigan decisions specify that except in exigent circumstances, photographs of an accused "known to be in custody or who can

readily be produced for a lineup" may not be shown to witnesses for purposes of identification and that a line-up cannot be conducted without providing defendant proper representation. *People v Jackson,* 391 Mich 323, 338–339; 217 NW2d 22 (1974), *People v Anderson,* 389 Mich 155, 186–187; 205 NW2d 461 (1973).

Recently, the Michigan Supreme Court refused to extend these requirements to the pre-custody, pre-questioning, mere suspicion phase of the criminal investigation. *People v Lee,* 391 Mich 618, 625; 218 NW2d 655 (1974). In *Lee,* the Court recognized the problems which would attend requiring counsel in the circumstances:

"It is not feasible to require appointment of counsel in cases of pre-custody photographic showups where there is no detention of the defendant since under such a rule each photograph arguably depicts a suspect and therefore each person whose photograph appears in the photographic display, or perhaps even the 'mug book' would require the representation of counsel. That would be impossible and absurd." *People v Lee, supra* at 625.

The Court stated in particular that where defendant was not in custody the mere fact that an investigation had focused on him would not give rise to the right to counsel. *People v Lee, supra* at 625. Consequently, for purposes of defendant's claim that counsel was required for the photographic showup, we need address only the question whether defendant was in custody on May 20, 1975.

The record is clear that defendant was not in custody on the date the photographs were displayed to the four boys. Defendant had voluntarily agreed to accompany police to the station in order to answer some questions concerning the incident

earlier in the day. He was not placed under arrest at that time and he could have refused to cooperate with the police. Certainly, the evidence as available at that point would have required more investigation before any further action could have been taken against defendant. Officer Canada had interviewed defendant with the understanding that defendant had appeared voluntarily, was not under arrest and could have left at any time. From the basis of this evidence, we can conclude without hesitation that defendant was not in custody. Therefore, defendant had no right to counsel at the point when photographs were shown to the four boys.

However, we must address the further question whether the photographic showup was legally justifiable at all in view of the fact that defendant might possibly have been available for corporeal lineup. Beyond the rule laid down in *Anderson* that photographic identification could not be used where the accused is in custody, this Court has established the corollary that identification by photograph may not be used in pre-custody situations where the accused can be readily produced for a corporeal lineup. *People v Smalls,* 61 Mich App 53, 59–60; 232 NW2d 298 (1975), *People v Beasley,* 55 Mich App 583, 585–586; 223 NW2d 77 (1974), *People v Cotton,* 38 Mich App 763; 197 NW2d 90 (1972). See also *People v Jackson,* 391 Mich 323, 338; 217 NW2d 22 (1974). One question we must address then regarding the propriety of holding a photographic rather than a corporeal showup is whether defendant was readily available for a lineup on that date. The trial court failed to make a specific finding of fact in this regard and we find this omission error.

We are not willing to infer that defendant was

readily available for a corporeal lineup on May 20, 1975. Though defendant had cooperated in the initial stages of the investigation, the proceedings up to that point had been simply investigative and nothing more. No indication appears from the facts as to what reaction defendant would have had had he been requested to participate in a corporeal lineup. Clearly, police had little evidence isolating defendant as a principal suspect. He had not been taken into custody nor detained in any other way. He was allowed to leave the station after being interviewed and photographed. In essence, the police had no legal means at that point to force defendant to participate in the corporeal lineup. Consequently, we do not find that defendant was "readily available" for a corporeal lineup or that the trial court was in error by failing to infer such availability. We thus hold that the photographic showup was a permissible means of identification at this early stage of investigation. See *People v Smalls, supra* at 59–60, *People v Beasley, supra* at 585–586. See also *People v Jackson, supra* at 339, fn 16.

Regarding defendant's second allegation, we would merely state that failure to object to the admission of the testimony of the three child witnesses as incompetent waived his right to now assert the alleged error on appeal. See MCLA 600.2163; MSA 27A.2163. See also *People v Gay,* 15 Mich App 484, 486; 166 NW2d 618 (1969).

We also believe the trial court adequately instructed the jury as to the weight and credibility to be given the testimony of the three child witnesses where both prosecution and defense counsel in opening argument directed the jury's attention toward carefully weighing the testimony of these witnesses and where the court itself gave an in-

struction couched particularly in terms of weighing the credibility of such young witnesses. See *People v Strunk,* 11 Mich App 99, 101; 160 NW2d 602 (1968).

Neither do we find an abuse of discretion in the trial court's admission into evidence pursuant to MCLA 768.27; MSA 28.1050 of testimony regarding the alleged prior sexual offense involving the 13-year-old witness where the acts were clearly similar and could serve as a positive basis for identification of defendant and when their probative value as evidence outweighed any prejudicial effect. See *People v Frank Johnson,* 58 Mich App 1, 4–5; 226 NW2d 730 (1975).

Having reviewed and addressed those questions raised by defendant which we feel merit discussion and finding none persuasive, we sustain the trial court.

Affirmed.

QUINN, P. J., did not participate.