PEOPLE v ERWIN WILSON

Docket No. 78-4984. Submitted December 5, 1979, at Lansing.—Decided January 22, 1980.

Defendant, Erwin C. Wilson, was convicted of unarmed robbery in the Oakland Circuit Court, Steven N. Andrews, J. Defendant Appeals, attacking the racial makeup of the jury and alleging that identification testimony was tainted by a photographic showup prior to his arrest. *Held:*

1. Defendant offered no proof of the racial makeup of the county and made no claim of official, racially-motivated slanting of the panel. Both are necessary to the constitutional challenge of a racially unrepresentative jury.

2. It is proper for the police, prior to arrest, to obtain an identification of a suspect by a witness via a photographic showup rather than corporeal lineup, even where the whereabouts of the suspect are known and there exists probable cause for his arrest. Admission of the identification testimony was proper.

Affirmed.

1. JURY — RACIAL MAKEUP OF JURY — EVIDENCE.

There must be a showing of the racial makeup of the jury in question, the racial makeup of the county from which the panel was drawn and the fact that racially-motivated officials slanted the panel before a constitutional challenge to the racial makeup of a jury may be sustained.

2. CRIMINAL LAW — EVIDENCE — IDENTIFICATION — PHOTOGRAPHIC SHOWUP — CORPOREAL LINEUP.

Testimony showing that a defendant, not in custody, was identified by a witness in a photographic showup prior to arrest was

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury §§ 173-176.
  Use of peremptory challenge to exclude from jury persons belonging to race or class. 79 ALR3d 14.
[2] 21 Am Jur 2d, Criminal Law § 368.
  Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedures. 39 ALR3d 1000.

properly admitted at trial; it is proper for the police, prior to arrest, to obtain an identification of a suspect by a witness via a photographic showup rather than corporeal lineup, even where the whereabouts of the suspect are known and there exists probable cause for his arrest.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Lawrence J. Bunting,* Assistant Prosecuting Attorney, for the people.

*James P. Lawson, P.C.* (by *David M. Lawson),* for defendant.

Before: DANHOF, C.J., and BEASLEY and CYNAR, JJ.

DANHOF, C.J. The defendant was convicted by a jury of unarmed robbery, MCL 750.530; MSA 28.798, and sentenced to imprisonment for a term of 4 to 15 years. He brings this appeal as of right.

The testimony indicates that the victim was placing her children in her car at approximately sunup on January 3, 1978, when a man forced her down on the front seat of her car and threatened to hurt the children if she did not relinquish her purse to him. He took her purse from the rear seat of the automobile and fled.

The victim's husband witnessed the event from their apartment and, unshod, pursued the robber through the snow to a getaway vehicle. He was able to furnish the police with a license number, which led them to the defendant.

The defendant's first claim on appeal relates to the racial makeup of the panel from which his jury was drawn. It developed at trial that only 4.4% of the members of that panel were black while, the defendant claimed, the citizenry of the

city of Pontiac was approximately one half comprised of blacks.

The defendant does not argue that the panel was not selected in accord with MCL 600.1304; MSA 27A.1304. That statute has successfully met constitutional challenge in *People v Sanders,* 58 Mich App 512; 228 NW2d 439 (1975). We also note that the defendant failed to offer any proofs regarding the racial makeup of the county from which the panel was drawn and that he failed to prove or even to seriously claim that official, racially-motivated "slanting" of the panel had occurred. Both of these facts are essential to a constitutional challenge of a racially unrepresentative jury. See *Castaneda v Partida,* 430 US 482; 97 S Ct 1272; 51 L Ed 2d 498 (1977).

Shortly before the defendant's arrest, the victim of the robbery was shown an array of photographs, from which she picked a picture of the defendant. No attorney was present at this procedure. She identified the defendant at trial and both she and the detective who supervised the identification procedure testified to her choice of the defendant's photograph from the array. No hearing to determine whether the in-court identification was affected by the exposure to the photographs was held or requested. All the testimony relating to identification passed without objection relative to the photographic showup. The defendant objected at last to introduction of the photographic array.[1]

The defendant argues on appeal, as he did in the trial court in resisting admission of the photographs, that the photographic array shown the

[1] Because the issues the defendant has raised with respect to the identification procedures employed in this case touch upon his rights to due process and assistance of counsel, we review them despite his far-from-adequate preservation of the claim by action in the trial court. See *People v Metcalf,* 65 Mich App 37; 236 NW2d 573 (1975).

victim was suggestive in that the photograph of the defendant was distinguished by a blemish or mark located at the forehead. The prosecutor pointed out that all the photos were blemished in some respect and that the mark on the photograph of the defendant was fortuitous. The trial judge treated the objection as challenging the admission of the photos and the identification testimony as well. Viewing the array, he found that it was not unduly suggestive and that the forehead mark was significant only for its impact on the reliability of the victim's testimony. The circumstances under which the victim was shown the photographs were revealed in direct and cross-examination.

Pressing this issue on appeal, having apparently made no effort to produce the array for our inspection, the defendant asks this Court to substitute its assessment of the unseen photographs for the informed judgment of the trial court. This we will not do.

The defendant's second challenge to the identification testimony consists of a claim that the photographic showup should never have been held and that instead the police should have offered the victim a corporeal lineup attended by an attorney representing the defendant.

The evidence shows that the victim's husband had pursued the robber after the crime and observed the getaway vehicle. His description of that vehicle allowed the police to trace it to its owner, the defendant's fiancée. A visit to the fiancée's home revealed that the car was there along with the defendant, who spoke with detective Kluwe at his request. No effort to arrest the defendant was made at this time. After the victim had identified the defendant in the photographic display, detective Kluwe returned to the fiancée's home and

arrested the defendant, apparently without incident. It is the defendant's contention that he was subject to arrest upon probable cause even before the photographic showup was held and should therefore have been either arrested or asked to appear for a corporeal lineup.

In *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973), our Supreme Court examined the constitutional right to counsel and the problems inherent in lineup and photographic showup identifications by eyewitnesses to crimes. The Court established rules governing the use of photographic showups:

"1. *Subject to certain exceptions, identification by photograph should not be used where the accused is in custody.*

"2. *Where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures."* (Emphasis in original.) 389 Mich 155, 186-187.

These rules were reaffirmed in *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), and *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974). In the former case, the Court noted that the *Franklin Anderson* rule, while closely allied with the right to counsel, was based on the Court's assessment of the reliability of eyewitness identification and its power to govern the taking of evidence in Michigan courts. 391 Mich 323, 338.

Panels of this Court have discussed the notion that the *Franklin Anderson* rules may apply not only when a suspect is actually in custody, but also when he is "readily available" for a corporeal lineup. See *People v McNeill,* 81 Mich App 368; 265 NW2d 334 (1978), *People v Hill,* 88 Mich App

50; 276 NW2d 512 (1979), and *People v Coles,* 79
Mich App 255, 262; 261 NW2d 280 (1977). The
meaning of ready availability has been variously
defined. In *People v Hoerl,* 88 Mich App 693, 700,
n 4; 278 NW2d 721 (1979), a rather restrictive
meaning was suggested:

> "To the extent that certain cases suggest that defen-
> dant is 'readily available' so long as his whereabouts
> are known, or, if he has been released on bond pending
> another charge, *e.g., People v Smalls,* 61 Mich App 53,
> 59-60; 232 NW2d 298 (1975), *People v Beasley,* 55 Mich
> App 583, 585-586; 223 NW2d 77 (1974), we decline to
> follow them. In our opinion, unless a defendant can be
> apprehended, detained, and legally compelled to partici-
> pate in a corporeal lineup, he is not 'readily available'."

None of the cases that have discussed the notion
of the "readily available" suspect has involved a
suspect who was "available" because there existed
probable cause for his arrest. Typical of the cases
is *People v McNeill, supra,* in which a suspect who
was not in custody was held to be unavailable as
well, largely due to his invulnerability to valid
arrest. 81 Mich App 368, 377. Thus, while fre-
quently discussed, the "readily available" exten-
sion of the *Franklin Anderson* rule has never been
applied or observed in its effect upon an actual
police investigation. The case at bar is the first
"live" case involving this principle, and provides
the heretofore missing opportunity to assess the
merits of the idea.

By all appearances, this case was investigated in
good faith and in accord with sound police prac-
tice. Although detective Kluwe had good reason to
suspect that the defendant was the robber after
seeing him in the home where the getaway vehicle
was found and learning that he was the fiancée of

the owner of the vehicle, he took the last careful step of seeking identification by an eyewitness to the crime before going on to arrest the defendant.

It is suggested that detective Kluwe could have asked the defendant to appear voluntarily for a corporeal lineup. Such a request might have been honored. It is also possible that the request would have made the defendant impossible to locate when his arrest was finally sought. The other alternative open to detective Kluwe was to arrest the defendant before he felt that the arrest was warranted, thereby placing the defendant in custody and raising the necessity for a corporeal lineup with counsel present.

An extension of the *Franklin Anderson* rule to require arrest and corporeal lineup in a case such as this would pressure police, who wish to have their circumstantial evidence against a suspect confirmed by an eyewitness to the crime, to arrest the suspect as soon as they estimate that their evidence provides probable cause to do so. This pressure would have the highly undesirable effect of increasing the incidence of premature and unjustified arrest. Persons suspected of involvement in crime are the obvious victims of such an increase; even in cases in which there is probable cause to arrest, photographic showups may prove the suspicion to be misplaced and thus save the suspect from the inconvenience of arrest. The injury to the public's interest in the apprehension of offenders is also considerable. An arrest made upon insufficient cause can lead to the permanent suppression of valuable evidence. The suspect, when released, will be forewarned and is likely to remove the evidence or himself from the jurisdiction.

Suspects might fear that, if the authorities are

free to use photographic showups when the subject of an investigation could be arrested and the more reliable corporeal lineup employed, arrests will be postponed in hope of gaining an identification from a suggestive photographic array. This fear rests upon a very insubstantial foundation. The suggestive array is itself violative of due process, and every defendant has a remedy for such improper procedures. See *Simmons v United States,* 390 US 377; 88 .S Ct 967; 19 L Ed 2d 1247 (1968), and *Franklin Anderson, supra,* 167-170. In any event, there is in this case no sign of improper police activity that would call the photographic showup into question.[2]

We believe that the actions of the police in this investigation were not improper and should not be restricted by an extension of the *Franklin Anderson* rule. We decline to apply that rule to upset this conviction. There being no fault in the pretrial identification procedures, the identification testimony was properly admitted.

The defendant's contention that the victim was allowed to view and identify him under unduly suggestive circumstances at the preliminary examination is without merit. See *People v Solomon,* 391 Mich 767; 214 NW2d 60 (1974), *People v Belenor,* 71 Mich App 10; 246 NW2d 355 (1976).

We have reviewed the defendant's remaining claims of error and find that they are without merit.

Affirmed.

---

[2] This case also lacks the special circumstances that produced the result in *People v Cotton,* 38 Mich App 763; 197 NW2d 90 (1972), an unusual case involving the right to counsel rather than the threshold issue involved here.