PEOPLE v DUMAS

Docket No. 45950. Submitted September 3, 1980, at Lansing.—Decided December 2, 1980.

Otis L. Dumas was convicted of breaking and entering following a jury trial in Kent Circuit Court, Stuart Hoffius, J. At the trial, defendant objected to the in-court identification of him by two prosecution witnesses on the basis that such identification was tainted by an improper photographic showup which occurred prior to his arrest. The trial court permitted the in-court identification and denied the defendant's motions for a mistrial. Prior to the sentencing hearing, defense counsel and the trial judge held an in-chambers sentencing conference outside the presence of the defendant. Defendant was afforded the opportunity to address the court at the sentencing hearing but did not utilize that opportunity. Defendant appeals, arguing that the photographic showup was improper because he should have been arrested, placed in a corporeal lineup, and afforded assistance of counsel and that he was effectively denied his right to allocution and the right to be present at all critical stages of the proceedings. *Held:*

1. Because of the potential effect upon eyewitness identifications, photographic showups should not be used where the accused is in custody except under special circumstances. When a photographic showup involving an in-custody accused is justified, the accused has the same right to counsel as would attach to a corporeal lineup. Photographic showups also are prohibited where a suspect is readily available for or can be easily produced at a corporeal lineup.

2. Where the circumstances are not sufficient to provide the probable cause necessary to arrest a suspect and the police do

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 21 Am Jur 2d, Criminal Law §§ 309 *et seq.,* 314.5, 369.
    Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedure. 39 ALR3d 1000.
[2] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[3] 5 Am Jur 2d, Arrest §§ 16, 25.
[5] 21 Am Jur 2d, Criminal Law § 527 *et seq.*

not have less restrictive incidences of control over the suspect, the police may properly use a photographic showup rather than a corporeal lineup, for to hold otherwise would encourage groundless arrests of those suspected of crimes. As to such photographic showups occurring during the pre-custody, pre-interrogation, mere suspicion phase of an investigation, there is no need to provide representation of counsel for those persons whose photographs are used in the photographic showup.

3. Resentencing is not mandated by reason of the in-chambers sentencing conference held out of the presence of the defendant. A sentencing conference between defense counsel and the trial court held prior to the sentencing hearing is not a critical stage of the proceedings requiring the presence of the defendant. A defendant will not be heard to complain about the denial of allocution where he was afforded an opportunity at the sentencing hearing to address the court but chose not to take that opportunity.

Affirmed.

1. CRIMINAL LAW — PHOTOGRAPHIC IDENTIFICATION — CUSTODY — COUNSEL.

Photographic showups, because of their potential effect on eyewitness identifications, should not be used, subject to certain exceptions, where an accused is in custody; where a photographic showup is justified for purpose of identification of an in-custody accused, the accused has the same right to counsel as would attach to a corporeal identification procedure.

2. CRIMINAL LAW — PHOTOGRAPHIC IDENTIFICATION — CORPOREAL LINEUP.

Photographic showups are prohibited where a suspect is readily available for or can be readily produced at a corporeal lineup.

3. ARREST — PROBABLE CAUSE.

Probable cause to arrest exists where the facts and circumstances surrounding a criminal act would lead a reasonably prudent person to believe a felony was committed and that the person to be arrested was the perpetrator of the offense.

4. CRIMINAL LAW — PHOTOGRAPHIC IDENTIFICATION — CORPOREAL LINEUP — COUNSEL.

Neither a corporeal lineup nor representation by counsel are required during the pre-custody, pre-investigation, mere suspicion phase of an investigation; a photographic showup is proper where there is an absence of probable cause to arrest and the

suspected person is not otherwise within the control of the police.

5. CRIMINAL LAW — SENTENCING — SENTENCING CONFERENCE —
   RIGHT TO ALLOCUTION — COURT RULES.

Resentencing is not required by reason of a defendant's absence from an in-chambers sentencing conference between defense counsel and the trial judge, since such a conference is not a critical stage at which the defendant must be present and such a conference does not deny a defendant the right to allocution where the right to speak is afforded to the defendant at the sentencing hearing (GCR 1963, 785.8[2]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Chief Appellate Attorney, for the people.

*George S. Buth,* for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and M. J. KELLY and BEASLEY, JJ.

M. J. KELLY, J. On February 28, 1979, defendant, Otis Dumas, was convicted by a jury of breaking and entering, contrary to MCL 750.110; MSA 28.305. From this conviction he appeals of right and raises two issues.

The conviction arose out of an incident occurring in a Kentwood hotel room occupied by Adrian Licciardi and Robert Mitchell in the early morning hours of November 5, 1978. Licciardi testified that at about 6 a.m. he observed a person enter the room, look through some clothing and remove his (Licciardi's) wallet. Licciardi then jumped up from his bed, which frightened the intruder and caused him to drop the wallet. The intruder then ran out of the room. Licciardi and Mitchell, who also awoke in time to see the intruder run from the room, gave immediate chase but were unable to

catch him. They then called police. Both men testified they saw defendant's face from a distance of 5 to 10 or 15 yards respectively.

Upon his arrival at the hotel, Kentwood police officer Thomas Zimmerson was directed by Licciardi and Mitchell to a green and yellow station wagon, the only vehicle in the hotel parking lot without dew on it. The car was also found to have a warm engine compartment and the keys were in the ignition. Zimmerson checked the vehicle's registration and was informed that it belonged to the defendant. Zimmerson then summoned a detective Harrington to the scene. While at the hotel, Harrington conducted a photographic identification, during which Licciardi and Mitchell picked defendant out of seven or eight pictures. Licciardi described the man as wearing blue jeans, a brown turtle neck sweater and a blue jean jacket.

Shortly after the identification, defendant, then dressed in a pair of slacks and button-down sweater, walked around the corner of the building. Both Licciardi and Mitchell immediately identified defendant as the man who had entered their room.

During trial, defense counsel made and renewed a motion for a mistrial, arguing that the photographic identification had impermissibly tainted Licciardi's in-court identification of defendant. The court then ordered Licciardi recalled for testimony on the independent basis of the indentification. Licciardi testified, out of the jury's presence, that he was initially undecided between two of the photographs, and that the photograph of the defendant assisted him in being able to identify defendant at the scene and at trial. On further questioning by the prosecutor, Licciardi again admitted that the photograph helped him make the identification at the scene. However, he also

claimed that his in-court identification did not depend on the photograph.

On appeal defendant argues that the trial court reversibly erred in permitting Licciardi and Mitchell to make in-court identifications of him, following an allegedly improper photographic identification. Defendant urges that his known ownership of the green and yellow station wagon and the circumstances of the breaking and entering required his formal arrest and a corporeal line-up for identification.

Photographic showups, due to their potential effect on eyewitness identifications, have been strictly limited in their application. In *People v Franklin Anderson,* 389 Mich 155, 186-187; 205 NW2d 461 (1973), the Supreme Court established two basic rules governing such investigatory procedures:

"1. *Subject to certain exceptions, identification by photograph should not be used where the accused is in custody.*

"2. *Where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures." (Emphasis in original; footnotes deleted.)*

See, also, *People v Jackson,* 391 Mich 232; 217 NW2d 22 (1974), and *People v Currelley,* 99 Mich App 561; 297 NW2d 924 (1980). Subsequent panels of this Court have applied more restrictive limitations on the use of photographic showups, by prohibiting their use in cases where a suspect is "readily available" for or can be "readily produced" at a corporeal lineup. *People v McNeill,* 81 Mich App 368; 265 NW2d 334 (1978), *People v Smalls,* 61 Mich App 53; 232 NW2d 298 (1975),

*People v Beasley,* 55 Mich App 583; 223 NW2d 77 (1974).

Although various opinions of this Court have differed as to what circumstances will constitute reasonable availability for appearance at a corporeal lineup, there is at least uniform agreement that probable cause to arrest is sufficient. See *People v Hoerl,* 88 Mich App 693, 700, fn 4; 278 NW2d 721 (1979), and *People v McNeill, supra,* 377, finding defendant not readily available where "the police had no legal means * * * to force defendant to participate in the corporeal lineup".

If the facts and circumstances surrounding a criminal act would lead a reasonably prudent person to believe a felony was committed and that a certain individual was the perpetrator of the offense, probable cause to arrest exists. *People v Lynn,* 91 Mich App 117, 122; 283 NW2d 664 (1979), *lv gtd* 407 Mich 902 (1979), *People v Thatcher,* 83 Mich App 527; 269 NW2d 210 (1978). In the instant case, at the time of the photographic identification session, the extent of information linking defendant to the breaking and entering was the presence of his car in the motel parking lot, a warm engine, and the fact that the car keys were in the ignition. The witnesses' limited descriptions of the intruder were also provided. These facts do not suggest probable cause for arrest and thus would not mandate defendant's presence at a corporeal lineup.[1] Additionally, defendant was not

---

[1] We also note with approval the recent decision in *People v Erwin Wilson,* 95 Mich App 93, 99-100; 290 NW2d 89 (1980), as a case bearing substantial factual similarity to the instant case. Despite a finding in favor of probable cause to arrest, the *Wilson* Court held defendant's photographic showup not to constitute reversible error:

"An extension of the *Franklin Anderson* rule to require arrest and corporeal lineup in a case such as this would pressure police, who wish to have their circumstantial evidence against a suspect confirmed by an eyewitness to the crime, to arrest the suspect as soon as they estimate that their evidence provides probable cause to do so.

subject to the elements of police control found to constitute ready availability in *People v Smalls, supra* (defendant released on bond for a pending similar offense) and *People v Beasley, supra* (defendant out on bond).

We decline to extend the rule of *Franklin Anderson* to the pre-custody, pre-interrogation, mere suspicion phase of defendant's investigation. As noted in *People v Lee,* 391 Mich 618, 625; 218 NW2d 655 (1974):

"It is not feasible to require appointment of counsel in cases of pre-custody photographic showups where there is no detention of the defendant since under such a rule each photograph arguably depicts a suspect and therefore each person whose photograph appears in the photographic display, or perhaps even the 'mug book' would require the representation of counsel. That would be impossible and absurd."

Absent probable cause to arrest or the less restrictive incidences of police control found in *Smalls*

---

This pressure would have the highly undesirable effect of increasing the incidence of premature and unjustified arrest. Persons suspected of involvement in crime are the obvious victims of such an increase; even in cases in which there is probable cause to arrest, photographic showups may prove the suspicion to be misplaced and thus save the suspect from the inconvenience of arrest. The injury to the public's interest in the apprehension of offenders is also considerable. An arrest made upon insufficient cause can lead to the permanent suppression of valuable evidence. The suspect, when released, will be forewarned and is likely to remove the evidence or himself from the jurisdiction.

"Suspects might fear that, if the authorities are free to use photographic showups when the subject of an investigation could be arrested and the more reliable corporeal lineup employed, arrests will be postponed in hope of gaining an identification from a suggestive photographic array. This fear rests upon a very insubstantial foundation. The suggestive array is itself violative of due process, and every defendant has a remedy for such improper procedures. See *Simmons v United States,* 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968), and *Franklin Anderson, supra,* 167-170. In any event, there is in this case no sign of improper police activity that would call the photographic showup into question." (Footnote omitted.)

and *Beasley,* the photographic showup herein did not impermissibly point to the defendant as perpetrator of the breaking and entering. We thus hold that defendant was not the subject of an impermissible photographic showup.

Defendant next urges that resentencing is required because he was absent from an in-chambers sentencing conference between defense counsel and the trial judge. He argues that the conference effectively denied him the right to allocution and the right to be present at all critical stages of the proceedings below. GCR 1963, 785.8(2); Const 1963, art I, § 20; MCL 768.3; MSA 28.1026. We find no error here, however, because "[t]here is no requirement that a defendant be present during an in-chambers discussion with counsel regarding the trial court's sentence". *People v Worden,* 91 Mich App 666, 685; 284 NW2d 159 (1979). See *People v Briggs,* 94 Mich App 723, 727; 290 NW2d 66 (1980), *lv gtd* 408 Mich 958 (1980). The record also discloses that defendant was afforded an opportunity to personally address the court prior to its imposition of sentence. Defendant chose not to exercise his right to speak and may not now argue as error his decision to forego allocution. *People v Brown,* 96 Mich App 565; 293 NW2d 632 (1980), *People v Richards,* 95 Mich App 433, 438; 291 NW2d 69 (1980).

Affirmed.