# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DUNCAN ERIC WILLIS II,

       Defendant-Appellant.

UNPUBLISHED
March 8, 2016

No. 324617
Mecosta Circuit Court
LC No. 14-008175-FC

Before: METER, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

A jury found defendant guilty of first-degree felony murder, MCL 750.316(1)(b); two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(e) (armed with a weapon); carrying a dangerous weapon with unlawful intent, MCL 750.226; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life without the possibility of parole for the felony murder conviction, and to prison terms of 50 to 100 years for each CSC I conviction, 40 to 60 months for the carrying a dangerous weapon conviction, and two years for the felony-firearm conviction. Defendant appeals as of right. We affirm.

## I. FACTS

On November 21, 2013, defendant retrieved a shotgun from his home and went across the street to the home of JS at approximately 7:00 p.m. in an effort to determine whether JS or one of the other two adult women present at the home had called Child Protective Services (CPS) to report that defendant had left his children home alone. According to the testimony, defendant demanded to know who had called CPS and, while armed with the gun, forced the women to undress and sexually assaulted them while holding them hostage in the home. While defendant had the women in a bedroom with the door closed, JS's mother, KH, entered the home. According to JS, defendant stated that if anyone came through the door he would "blow their head off." KH opened the bedroom door and defendant shot her in the face; she died instantly. Defendant continued to sexually assault the three women over the course of several hours before allowing them to leave the home the following morning.

Defendant did not deny shooting KH, but alleged that the shotgun accidentally fired as he was raising it with one hand after he heard a voice in the house.  Defendant denied sexually assaulting the three women.

## II.  ANALYSIS

## A.  JURY COMPOSITION

Defendant first argues that his Sixth Amendment right to a fair trial was violated because the jury was not drawn from a fair cross-section of the community and that his trial counsel provided ineffective assistance by failing to object to the composition of the jury venire. Because defendant did not challenge in the trial court the composition of the jury venire or jury, review is for plain error affecting substantial rights.  *People v Carines*, 460 Mich 750, 763, 764; 597 NW2d 130 (1999).  Review of the ineffective assistance of counsel claim is "limited to mistakes apparent on the appellate record."  *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

To prevail on a claim of ineffective assistance of counsel, "a defendant must demonstrate that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness, and that it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different."  *People v Jordan,* 275 Mich App 659, 667; 739 NW2d 706 (2007).

A criminal defendant is entitled to an impartial jury drawn from a fair cross-section of the community.  *Taylor v Louisiana*, 419 US 522, 538; 95 S Ct 692; 42 L Ed 2d 690 (1975).  To establish a prima facie violation of the fair cross-section requirement, a defendant has the burden of proving the following:

> "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process." [*People v Bryant*, 491 Mich 575, 581-582; 822 NW2d 124 (2012), quoting *Duren v Missouri*, 439 US 359, 364; 99 S Ct 58 L Ed 2d 589 (1979).]

With respect to the first element, the prosecutor concedes that, as an African American, defendant is a member of a distinctive group for purposes of the fair cross-section requirement. With respect to the second and third elements, defendant refers to the 2014 United States Census of Mecosta County, which, according to defendant, indicates that Mecosta County is 93% Caucasian and about 3% African-American.  He also refers to the 2010-2011 United States Census of the city of Big Rapids, which, according to defendant, indicates that Big Rapids is

about 6.8% African-American.[1]  Defendant also relies on the statement of one potential juror during a colloquy with the prosecutor in which the juror stated, "I would think that there would be a more diverse pool to choose from in lieu of the situation in regards to the race."  The juror's statement suggests that the jury venire had fewer African-Americans than the juror would have expected, but does not establish how many African-Americans were in the jury venire.[2]

"A systematic exclusion is one that is inherent in the particular jury-selection process utilized."  *Bryant*, 491 Mich at 615-616 (quotation marks and citation omitted).  "[W]hen applying the relevant statistics, a court must examine the composition of jury pools and venires *over time* using the most reliable data available to determine whether representation is fair and reasonable."  *Id*. at 599-600.  Defendant has failed to set forth any evidence with respect to the composition of jury pools over time in Mecosta County or to a systematic exclusion of African-Americans in Mecosta County's jury-selection process.  See *id*. at 595-597.

There being no evidence in the record to support his allegations on appeal, defendant has not shown that plain error occurred with respect to the composition of the jury venire.  Further, because the record does not show any reason to suspect a *Duren* violation, defendant has failed to demonstrate that counsel was ineffective for failing to object to the jury venire.  See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

## B.  PHOTOGRAPHS

Defendant argues that he was denied a fair trial by the admission into evidence of two photographs of KH's body.  He contends that the photos were gruesome and were more prejudicial than probative because defendant did not deny shooting KH and the evidence of guilt was not otherwise overwhelming.  To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal.  *People v Aldrich,* 246 Mich App 101, 113; 631 NW2d 67 (2001).  Defendant not only failed to object to the admission of the photos, but stipulated to their admission.  Because defense counsel stipulated to admission of the challenged photos, defendant is precluded from assigning error to their admission.  *People v Carter*, 462 Mich 206, 219; 612 NW2d 144 (2000); *People v McDonald*, 293 Mich App at 292, 295; 811 NW2d 507 (2011).  Defendant, however, argues that counsel was ineffective for stipulating to admission of the photos.

---

[1] Defendant concedes that this Court has said that when challenging the racial makeup of the jury panel, it is the county, not the city, that must be examined.  See *People v Wilson*, 95 Mich App 93, 95; 290 NW2d 89 (1980).  Thus, defendant's suggestion that the jury pool should have consisted only of residents of the city of Big Rapids because Big Rapids is more diverse is misplaced.

[2] In addition, we note that the juror acknowledged that the clerk's office randomly selects the jury venire, that the community did not have a large black population, and that the juror could be "color blind."

Relevant evidence is evidence that has any tendency to make a fact of consequence more or less probable, MRE 401, but the trial court must exclude relevant evidence if the probative value of the evidence is substantially outweighed by its prejudicial effect, MRE 403. This can occur when the evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight. See *People v Blackston,* 481 Mich 451, 462; 751 NW2d 408 (2008).

The trial court must weigh the probative value and prejudicial effect of gruesome photographs before admitting them. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). A pertinent question is whether the sole purpose of the photographs is to inflame the jury. *Id.* at 76-77. In this case, the record reveals that the prosecutor showed two photographs depicting the shotgun wounds on KH's body and the location of her body to demonstrate the condition and location of the body in relation to JS when defendant was forcing her to perform oral sex on him, and to identify KH as the person shot by defendant. The photographs are gruesome, but the trial court need not "protect the jury from all evidence that is somewhat difficult to view." *Id.* at 79. "[I]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id.* at 77 (quotation marks and citation omitted). Counsel cannot be faulted for failing to raise a meritless objection. *Fike*, 228 Mich App at 182.

## C.  EXTRANEOUS INFLUENCE

Defendant argues that the trial court erred by failing to develop a record and inquire into the possibility that the jury was influenced by the slogan on a T-shirt worn by the father of one of the victims while he was in the courtroom. Defendant makes the bare assertion that the spectator's "clothing was an unsubtle attempt to intimidate the jury into convicting defendant."

The pertinent questions are whether the jury was exposed to extraneous influences and whether the extraneous influences created a real and substantial possibility that they could have affected the jury's verdict. *People v Fletcher,* 260 Mich App 531, 540; 679 NW2d 127 (2004).

The record establishes that on the third day of trial, a bench conference of less than one minute was held off the record while the jury was out of the courtroom. The trial court then spoke with the spectator about his shirt that stated, "Talk sh_t, get dead" on the front, and "Say it to my f__kin' face" on the back; according to the spectator, the shirt was from an MMA (mixed martial arts) fight. The trial court informed the spectator that he was "wearing an inappropriate shirt" and stated, "You are not welcome here. Leave and don't come back." The record reveals that the spectator immediately left the courtroom and that the jury returned to the courtroom ten minutes later.

The record provides no indication that the jury was exposed to the slogan on the spectator's T-shirt or that, if it was, the shirt was prejudicial to the defense or the jury was affected by it. Defendant has failed to demonstrate plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

## D. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court scored the guidelines using factors that were not objective and verifiable, because the court did not have substantial and compelling reasons for its departure from the guidelines on his CSC I convictions, because the trial court imposed consecutive sentences, and because the sentences imposed for CSC I rendered his punishment cruel or unusual. However, defendant's sentencing issues are moot in light of defendant's mandatory sentence of life without parole on the first-degree murder conviction. *People v Watkins,* 209 Mich App 1, 5; 530 NW2d 111 (1995); *People v Passeno,* 195 Mich App 91, 102; 489 NW2d 152 (1992), overruled in part on other grounds by *People v Bigelow,* 229 Mich App 218; 581 NW2 744 (1998).

## E. STANDARD 4 BRIEF

Defendant contends in his Standard 4 brief that trial counsel was ineffective for advising defendant to waive the preliminary examination, by failing to object to the prosecutor's comments that defendant was a liar and that the prosecution witnesses were believable, by failing to object when the prosecutor allegedly badgered defendant on the stand and told the jury that the fact that defendant was being argumentative showed that his story was not believable, and by failing to move for a change of venue at defendant's request. Defendant does not, however, provide any citation to the record in support of his claims of error, and provides no detailed assertions or analyses in support of his contentions of error. "It is not enough for an appellant in his brief to simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority to either sustain or reject his position." *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959); see also *People v Kevorkian,* 248 Mich App 373, 389; 639 NW2d 291 (2001). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Thompson v Thompson,* 261 Mich App 353, 356; 683 NW2d 250 (2004).[3]

Affirmed.

/s/ Patrick M. Meter
/s/ Michael J. Riordan
/s/ Mark T. Boonstra

---

[3] Defendant also includes a number of additional issues in the statement of questions presented in his Standard 4 brief, but has failed to address any of these issues in the argument of his brief. These issues are also abandoned. *Thompson,* 261 Mich App at 356.