PEOPLE v HILL

Docket No. 77-58. Submitted June 5, 1978, at Grand Rapids.—Decided January 16, 1979.

Allen Hill, Jr., was convicted of armed robbery, Calhoun Circuit Court, Creighton R. Coleman, J. The defendant appeals, argu-

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 7] 17 Am Jur 2d, Continuance § 3.

[2] 17 Am Jur 2d, Continuance §§ 13, 32.

Withdrawal or discharge of counsel in civil case as ground for continuance. 48 ALR2d 1155.

[3] 21 Am Jur 2d, Criminal Law § 137.

29 Am Jur 2d, Evidence §§ 157, 440.

Validity and construction of statute requiring defendant in criminal case to disclose matter as to alibi defense. 45 ALR3d 958.

[4] 4 Am Jur 2d, Appeal and Error § 84.

[5-7] 17 Am Jur 2d, Continuance § 32.

21 Am Jur 2d, Criminal Law § 137.

29 Am Jur 2d, Evidence §§ 157, 440.

Validity and construction of statute requiring defendant in criminal case to disclose matter as to alibi defense. 45 ALR3d 958.

[8] 17 Am Jur 2d, Continuance §§ 6, 28.

[9] 63 Am Jur 2d, Prosecuting Attorneys § 27.

[10] 21 Am Jur 2d, Criminal Law §§ 368, 369.

66 Am Jur 2d, Records and Recording Laws § 10.

[11] 29 Am Jur 2d, Evidence §§ 371, 485, 785.

Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

Admissibility of evidence of showup identification as affected by allegedly suggestive showup procedures. 39 ALR3d 791.

Admissibility of photographic identification as affected by allegedly suggestive identification procedures. 39 ALR3d 1000.

[12] 21 Am Jur 2d, Criminal Law §§ 368, 369.

[13] 29 Am Jur 2d, Evidence §§ 371, 372.

Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

[14] 75 Am Jur 2d, Trial § 61.

Prejudicial effect of improper failure to exclude from courtroom or to sequester or separate state's witnesses in criminal case. 32 ALR2d 358.

[15] 29 Am Jur 2d, Evidence §§ 250, 269.

[16] 5 Am Jur 2d, Appeal and Error §§ 624, 625.

ing 1) that the trial court abused its discretion in denying the defendant's motion for an adjournment so that the defendant could furnish the prosecutor with the statutorily required notice of alibi prior to ten days before trial and to give defense counsel additional time to prepare adequately for trial, 2) that the trial court erred reversibly by failing to suppress the complaining witnesses' identifications of the defendant because those identifications were tainted by objectionable pre-trial identification procedures, 3) that the prosecution failed to carry its burden of proving that the identification procedure used at the first identification was fair and not so suggestive as to make irreparable misidentification likely, 4) that the trial court abused its discretion by failing, upon request, to sequester the witnesses at the defendant's mid-trial hearing on the constitutionality of the pre-trial identification procedures, 5) that the trial court erred in allowing the prosecutor to introduce evidence in rebuttal showing that the defendant was clean shaven *two months before the offense occurred*, and 6) that reversal is *required because the prosecutor interjected irrelevant considerations in cross-examining the defendant* and in his closing argument which denied the defendant a fair trial. *Held:*

1. The defendant was negligent in asserting his alibi claim and in notifying and discussing this defense with his counsel. Thus the trial court did not abuse its discretion in refusing to grant the continuance, even though the defendant was seeking the continuance in order to assert a constitutional right.

2. The trial court's finding that the identification procedure was not impermissibly suggestive was not erroneous. The inability of the prosecutor to produce a written report of a pre-trial identification procedure did not deny the defendant due process where a police officer who was present at the identification did produce some of the pictures used and testified in detail as to the procedure employed.

3. The prosecutor did produce four of the six photographs used in the pre-trial photographic identification procedure. Since the four photographs produced were all of persons of similar features, the inability of a police officer who was present at the procedure to identify positively the other two photographs used does not necessarily mean that the prosecutor failed to prove that the identification procedure was not impermissibly suggestive. The trial court did not err reversibly in finding that the identification procedure used was not so suggestive as to make irreparable misidentification likely.

4. The trial judge did not err in failing to exclude these

identifications held without counsel present at the displays since the defendant was not in custody or readily available at that time.

5. The defendant has demonstrated no prejudice from the trial court's failure, upon request, to sequester the witnesses at the mid-trial hearing. Any error in the judge's ruling was harmless.

6. It was not improper for the prosecutor to introduce evidence showing that the defendant was clean shaven approximately two months before the offense occurred in rebuttal to evidence introduced by the defendant that he had a beard on the date of the robbery and as early as two months before the offense.

7. No miscarriage of justice resulted from the prosecutor's cross-examination of the defendant or from his closing arguments and any prejudice caused by the cross-examination or the arguments could have been eliminated by a cautionary instruction; thus reversal is not required since the defendant raised no objection at trial.

Affirmed.

1. Continuance — Discretion of Trial Court.

The matter of granting or denying a motion for continuance is traditionally entrusted to the discretion of the trial court.

2. Continuance — Criminal Law — Appeal and Error — Standard of Review — Alibi — Substitution of Counsel — Constitutional Law.

The same standard established by the Supreme Court for reviewing a denial of a continuance to allow substitution of defense counsel should apply to a defendant's motion for a continuance based on the need for additional time to file the required alibi notice; this stricter standard should apply because the defendant's freedom and his constitutional right to have compulsory process for obtaining witnesses in his favor are at stake.

3. Criminal Law — Alibi — Notice — Failure to Give Notice — Adjournment — Statutes.

The statutory section which precludes a criminal defendant from offering evidence in support of an alibi defense if the defendant does not file and serve notice of the defense ten days prior to trial is now mandatory; therefore, where a defendant has failed to give timely notice of an alibi defense, an adjournment is the only way that the defendant can avoid the preclusion sanctions of the statute (MCL 768.21[1]; MSA 28.1044[1]).

4. APPEAL AND ERROR — CRIMINAL LAW — CONTINUANCE — DISCRETION OF TRIAL COURT — FACTORS — STATUTES.

Factors to be considered by an appellate court in determining whether a trial court abused its discretion in denying a defendant's motion for a continuance are: 1) whether the defendant was asserting a constitutional right, 2) whether he had a legitimate reason for asserting the right, 3) whether he was guilty of negligence, and 4) whether prior adjournments of trial were at the defendant's behest; if it has been determined that the trial court abused its discretion, the defendant must demonstrate prejudice resulting from the abuse of discretion (MCL 769.26; MSA 28.1096).

5. CONSTITUTIONAL LAW — CRIMINAL LAW — ALIBI DEFENSE — CONTINUANCE — RIGHT TO COMPULSORY PROCESS — WITNESSES.

A defendant who is seeking a continuance so that he may timely file and serve notice of an alibi defense is asserting a constitutional right, the right to compulsory process for obtaining witnesses in his favor; a trial court's denial of the defendant's motion for the continuance jeopardizes that right.

6. CONTINUANCE — CRIMINAL LAW — ALIBI — CONSTITUTIONAL LAW — EVIDENCE.

A defendant who is seeking a continuance for the purpose of allowing into evidence the testimony of his alibi witnesses is asserting his right to compulsory process and has a legitimate reason for asserting that right where the admission of the alibi testimony, if believed by the jury, might result in an acquittal.

7. CONTINUANCE — MOTIONS — CRIMINAL LAW — ALIBI — DISCRETION OF TRIAL COURT — NOTICE — ASSERTION OF ALIBI DEFENSE.

A trial court did not abuse its discretion in denying a defendant's motion for a continuance in order properly to file a notice of alibi where the defendant was negligent in asserting his alibi claim in that, despite a delay of over 21 months between the time of the defendant's arrest and his trial date, the defendant did not notify his defense counsel of the alibi defense until four days prior to trial.

8. CONTINUANCE — MOTIONS — CRIMINAL LAW — PREPARATION FOR TRIAL — PREJUDICE.

A trial court's denial of a defendant's motion for a continuance to allow defense counsel adequate time to prepare for trial does not warrant reversal of the defendant's conviction unless defendant can demonstrate some prejudice from the denial.

9. District and Prosecuting Attorneys — Evidence — Suppression of Evidence — Prosecutor's Duty — Evidence Favorable to Accused.

It is the prosecutor's duty not to suppress material evidence favorable to the accused.

10. Criminal Law — Identification Procedures — Photographic Identification — Record of Procedure.

The police should make and keep records on the photographic identification procedures they employ.

11. District and Prosecuting Attorneys — Identification Procedure — Photographic Identification — Reproduction of Photos — Suggestiveness — Burden of Proof.

A prosecutor's inability to reproduce a set of photographs used at a pretrial identification procedure is an important fact in determining whether he carried the burden of proving that the identification procedure was not impermissibly suggestive.

12. Constitutional Law — Criminal Law — Attorney and Client — Custody — Photographic Showups — Right to Counsel.

The mere fact that an investigation has focused on a defendant who is not in custody does not give him the right to counsel at a photographic showup.

13. Witnesses — Criminal Law — Identification — Improper Procedure — Independent Basis.

An in-court identification of a defendant by an eyewitness who has participated in an improper pretrial identification procedure must be excluded as evidence unless there is a showing by clear and convincing evidence that the identification was made on some basis other than the improper pretrial procedure; the prosecution must prove that the witness can totally eliminate from his recollection all observations at the improper pretrial identification and convince every reasonable mind that he distinctly recalls the defendant from fleeting impressions during the crime.

14. Witnesses — Criminal Law — Request to Sequester.

Requests to sequester witnesses should ordinarily be granted.

15. Criminal Law — Evidence — Rebuttal Evidence.

Allowing a prosecutor to introduce evidence, on rebuttal, that a defendant was clean shaven two months before the occurrence of the offense for which the defendant was charged was not error where the evidence was introduced to refute evidence

introduced by the defendant which indicated that he was growing a beard as early as two months before the offense.

16. CRIMINAL LAW — CROSS-EXAMINATION — FAILURE TO OBJECT — CURATIVE INSTRUCTIONS — MISCARRIAGE OF JUSTICE.

Reversal of a defendant's conviction due to alleged improper cross-examination of the defendant by the prosecution is not required, in light of the defendant's failure to object or request any curative instructions, if a cautionary instruction could have cured any prejudice; reversal is required only if the questioning would have resulted in a miscarriage of justice.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James Norlander,* Prosecuting Attorney, and *T. P. Hentchel,* Assistant Prosecuting Attorney, for the people.

*Rolf E. Berg,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C. J., and V. J. BRENNAN and R. H. CAMPBELL,* JJ.

R. H. CAMPBELL, J. On October 7, 1976, defendant was convicted by a jury of armed robbery, MCL 750.529; MSA 28.797. This case arose out of an armed robbery which occurred on December 12, 1974. At approximately 6 p.m. on that date, Anna Hosh and her children, Michael and Renee, had finished cleaning their restaurant and were leaving for the day. They exited through the rear door of the restaurant and as they were preparing to enter their automobile they were confronted by an armed man who demanded money. Michael tossed a box with the day's proceeds in it to the robber who then told the victims to lie on the ground. After they complied, the robber fled. Defendant was sentenced to a term of 10 to 20 years imprisonment and appeals as of right.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant's first claim on appeal is that the trial court abused its discretion in denying defendant's motion for an adjournment which was based on the grounds that defendant needed additional time so that he could furnish the prosecutor with the statutorily required notice of alibi prior to ten days before trial, see MCL 768.20(1); MSA 28.1043(1), and that defendant's counsel needed additional time to prepare adequately for trial. Defendant's motion for adjournment was made on September 30, 1976, six days before trial was scheduled. On October 4, 1976, after a hearing, the trial court denied defendant's motion for an adjournment.

The matter of a continuance is traditionally entrusted to the discretion of the trial court, *People v Wilson,* 397 Mich 76; 243 NW2d 257 (1976), *People v Merritt,* 396 Mich 67; 238 NW2d 31 (1976), *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972). In *People v Merritt, supra,* the Supreme Court indicated that the *Williams, supra,* standard for reviewing a denial of a continuance to allow substitution of defense counsel would apply to a motion for a continuance which was based on the need for additional time to file the required alibi notice. This stricter standard applies because the defendant's freedom and his constitutional right to have compulsory process for obtaining witnesses in his favor, US Const, Am VI; Const 1963, art 1, § 20, are at stake, see, *Merritt, supra,* at 82-83. Since the preclusion section of MCL 768.21(1); MSA 28.1044(1), is now mandatory, see *Merritt, supra, People v Charles Jackson,* 71 Mich App 395; 249 NW2d 132 (1976), an adjournment to allow the defendant time to file a notice of alibi is now the only way the defendant can avoid the severe sanctions mandated by the notice statute.

In *Wilson, supra,* at 81, the Supreme Court stated:

"In reversing the trial court, we enumerated four factors we considered important in finding that the trial court had abused its discretion in that case in not granting defendant a continuance: 1) the defendant was asserting a constitutional right; 2) he had a legitimate reason for asserting the right; 3) he was not guilty of negligence; 4) prior adjournments of trial were not at the defendant's behest. To these four points we add the traditional requirement that defendant on appeal must demonstrate prejudice resulting from the trial court's abuse of discretion. MCLA 769.26; MSA 28.1096."

In this case, defendant is asserting a constitutional right: the right to compulsory process for obtaining witnesses in his favor, see *Washington v Texas,* 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967), and the trial court's denial of defendant's motion for a continuance jeopardizes that right. The second factor enumerated in *Wilson, supra,* is whether the defendant had a legitimate reason for asserting his right and seeking a continuance. In this case, defendant is seeking a continuance for the purpose of allowing his alibi witnesses' testimony into evidence. The admission of this alibi testimony, if believed by the jury, would have resulted in an acquittal. Therefore, the defendant had a legitimate reason for asserting his right.

The more difficult prong of this test to apply in this case is determining whether the defendant was negligent. The crime occurred on December 12, 1974, and defendant was arrested on December 20, 1974. Defendant was represented by counsel throughout the proceedings in 1975 and until July 8, 1976, when his counsel withdrew. Two trial dates had been scheduled during that time but trial had been adjourned until a later date. A third trial date was scheduled for August 24, 1976,

but trial was not held as scheduled. On September 7, 1976, new counsel was appointed for the defendant. On September 9, 1976, defendant's trial was scheduled for October 4, 1976. Defendant's appointed counsel entered an appearance on September 10, 1976, and met with the defendant on September 14, 1976. Defendant met with his appointed counsel again on September 30, 1976, and this last meeting was allegedly the first time defendant notified his counsel of his alibi defense. Defendant has not given any reasonable explanation for his delay.

Under these facts, we conclude that the defendant was negligent in asserting his alibi claim and in notifying and discussing this defense with his counsel. We are not holding defendant responsible for the delays and the rescheduling of the trial dates but rather, we think that the passage of time from the date of the offense until counsel was notified of this alibi defense is indicative of defendant's negligence. The trial court did not abuse its discretion in denying defendant's motion for a continuance in order properly to file a notice of alibi. *People v Merritt, supra.*

Defendant also argues that the trial court erred in not granting his motion for a continuance to allow his counsel adequate time to prepare for trial. However, this claim does not warrant reversal unless the defendant can demonstrate some prejudice, *People v Wilson, supra,* at 81. Since defendant has not demonstrated that he suffered any prejudice from the trial court's denial of his motion for a continuance which was based on the grounds that his counsel needed more time to adequately prepare, we are convinced that any possible error was harmless beyond a reasonable doubt, *People v Wilson, supra, People v Eddington,* 77 Mich App 177; 258 NW2d 183 (1977).

Defendant further claims on appeal that the trial court erred reversibly by failing to suppress the complaining witnesses' identification of the defendant because those identifications were tainted by objectionable pre-trial identification procedures. The robbery occurred on December 12, 1974, at approximately 6 p.m. The robbery took place just outside the rear of the restaurant in an area illuminated by a mercury vapor light which was attached to the building next door. The robbery took approximately three to five minutes and the witnesses each acknowledged that they had a good opportunity to observe the robber.

Within an hour after the robbery, the witnesses viewed a set of photographs at the police station. According to the testimony introduced at trial, the witnesses were all taken into one long, narrow room and directed towards one end of the room. Then a set of photographs was displayed on a table in the middle of the room. The victims were instructed to approach the table separately, point at the picture of the robber, if they could recognize him in any of the pictures, and then to proceed to the other end of the room. Each witness, after viewing the photographs, pointed to the defendant's picture as that of the robber.

On December 13, 1977, another photographic display with six pictures took place. Again, the witnesses selected the picture of the defendant as that of the robber but this time the identifications were made simultaneously in the presence of the other witness. Anna and Michael Hosh also made an unequivocal in-court identification of the defendant which they stated was based on their observations during the robbery.

Defendant claims that the trial court erred in failing to suppress these witnesses' identifications

for four reasons. First, defendant claims that he was denied due process because the prosecutor could not produce any of the officer's written notes or reports concerning the procedures used at the first identification and could not produce all the photographs used in the identification. In the middle of the trial, Renee testified that within an hour of the robbery, the victims were taken to the police station to view some photographs. This testimony came as a surprise and, pursuant to defendant's motion, an evidentiary hearing was held to establish what took place at this first identification. The prosecutor could not produce any written reports on the photographic identification procedure used or a list of the photographs used in the display. The detective who was in charge of conducting the photographic display was in the hospital and unavailable for trial. Another officer who was present at the identification testified in detail as to what took place. He produced six photographs which he claimed were in the display. He testified that he was "sure" that four of the photographs were used and was "90% positive" that the other two photographs were used. The officer also testified that one of the reasons he knew which photographs were used in this case was because certain black and white photographs had been removed from his book of mug shots and this was the only case in which he had used black and white photographs for his display. The Hoshes also testified at this hearing and, except for some discrepancies concerning the number of pictures used in the display, their testimony corroborated that of the police officer.

It is the prosecutor's duty not to suppress material evidence which is favorable to the accused, *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L

Ed 2d 215 (1963), and the police should make and keep records on the photographic identification procedures they employ, see *People v Anderson,* 42 Mich App 10; 201 NW2d 299 (1972), *rev'd on other grounds,* 391 Mich 419; 216 NW2d 780 (1974), *People v Rowell,* 14 Mich App 190, 197, fn 1; 165 NW2d 423 (1968). However, the absence of a record or a written report in this case did not deny defendant due process. The officer present at the identification testified about the procedures used. He produced at least four of the six pictures used and stated that he was almost positive of the other two. His testimony as to which pictures were used was uncontroverted and it appears from the record that he had a sufficient means to substantiate his memory of this identification procedure. From the photographs produced, the trial court found that the identification procedure was not impermissibly suggestive. For the reasons stated, *infra,* we do not think this finding was erroneous. Also, since the pictures produced were not so dissimilar as to "single out" the defendant, we do not think that the officer's 10% uncertainty as to whether he was producing the other two photographs used denied defendant due process. If the picture of the defendant was not "singled out" in the display of the four pictures which the officer was positive were used, the defendant would not have been "singled out" by the addition of the other two pictures. Since the officer did produce, at least, some of the pictures used at the identification and testified in detail as to the procedures employed, we are able to conclude from his testimony that the inability of the prosecutor to produce a written report of the identification procedure did not deny defendant due process.

Defendant also claims that the prosecutor failed

to carry his burden of proving that the identification procedure used at the first identification was fair and not so suggestive as to make irreparable misidentification likely, see *People v Morton,* 77 Mich App 240; 258 NW2d 193 (1977), *People v Yacks,* 49 Mich App 444; 212 NW2d 249 (1973). Defendant claims that the identification procedure was impermissibly suggestive because: (1) all three witnesses were in the same room during the identifications, (2) the photographs shown were of people who had features similar to the defendant's, (3) the identification was conducted within an hour of the crime, and (4) only six photographs were displayed.

The prosecutor's inability to reproduce the set of photographs used at the identification is an important factor in determining whether he carried the burden of proving that the identification procedure was not impermissibly suggestive, *Anderson, supra,* at 16-17. However, in this case, the prosecutor did produce at least four of the six photographs used. It appears from the record that these photographs were all of persons with similar features. Since all the photographs produced were of persons with similiar features, we conclude that the inability of the officer to identify positively the other two photographs used does not necessarily mean that the prosecutor failed to prove that the identification procedure was not impermissibly suggestive.

The other factors mentioned by the defendant did not make this identification procedure so suggestive as to make irreparable misidentification likely. Although all three witnesses were present in the one room, the room was a long, narrow one with the witnesses who had not viewed the photographic display placed at one end of the room.

Each witness made his identification separately from the others and proceeded to the far end of the room. Even though only six photographs were displayed, the defendant's photograph was not "singled out" and we conclude that the trial judge did not err reversibly in finding that the identification procedure used was not impermissibly suggestive.

Defendant also claims that these identifications should be excluded because the second photographic display was impermissibly suggestive and because counsel was not present during this display. After an evidentiary hearing, the trial court denied defendant's motion to exclude this evidence. The trial court did not err reversibly in finding that the second photographic display was not impermissibly suggestive. All the photographs used in this display were produced. The pictures displayed did not "single out" the defendant. Although the witnesses did make simultaneous identifications of the defendant in the presence of each other at the display, this, by itself, did not make the procedure so suggestive as to make irreprarable misidentification likely.

The trial judge did not err in failing to exclude these identifications even though counsel was not present at the displays. Although defendant may have been the focus of the police investigation after the first photographic display, he was not in custody or readily available. "It is the fact of custody that requires implementation of the *Franklin Anderson* rule." *People v James Anderson,* 391 Mich 419, 422; 216 NW2d 780 (1974), see also, *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974), *People v McNeill,* 81 Mich App 368; 265 NW2d 334 (1978), *People v Coles,* 79 Mich App 255; 261 NW2d 280 (1977), *People v Richards,* 76

Mich App 695; 256 NW2d 793 (1977), but see
*People v Kachar,* 400 Mich 78, 89; 252 NW2d 807
(1977), *People v Cotton,* 38 Mich App 763; 197
NW2d 90 (1972).

Even if the *Franklin Anderson* rule is extended
to apply to precustodial identification procedures
when the defendant is the focus of the investiga-
tion, see *Kachar, supra, Cotton, supra,* the admis-
sion of the in-court identifications of these wit-
nesses does not require reversal because the wit-
nesses each had an independent basis for their in-
court identifications of defendant.[1] The test for
determining whether a witness has an indepen-
dent basis for an in-court identification is set out
in *Kachar, supra.* Applying the factors listed in
*Kachar, supra,* to the facts in this case, we con-
clude that the record establishes an independent
basis for the in-court identifications by Anna and
Michael. Neither witness had any previous rela-
tionship with defendant although defendant may
have eaten at their restaurant a few times prior to
the robbery. Both witnesses had an opportunity to
observe the robber while he was standing about
ten feet from them in an area illuminated by a
mercury vapor light. This opportunity for observa-
tion lasted from three to five minutes. The in-court
identifications occurred approximately 22 months
after the robbery. Each witness had given a fairly
detailed description of the robber. All of the de-
scriptions were consistent with the other descrip-
tions. None of the witnesses had failed to identify
defendant as the robber or previously identified
someone else as the robber. Although it is likely
that the witnesses were excited and apprehensive
during their observation of the robber, the record

---

[1] REnee Hosh also testified at trial. However, she testified that she
could not not identify defendant as the robber. Therefore, the admis-
sion of her testimony was harmless.

demonstrates that the witnesses had a good opportunity to observe the robber during the crime. It also shows that the witnesses all gave consistent descriptions of the robber which matched defendant's characteristics and they all consistently identified defendant as the robber. Finally, the determination that the witnesses' identifications were due to perceptions received at the time of the offense is credible in view of their performance at and the conduct of the photographic displays. The first display was conducted within hours after the robbery. The second occurred the next day. Both of these displays were conducted when the witnesses' perceptions of the robber were still fresh in their memories. The displays were not so suggestive as to make misidentification likely. A review of the record shows that these witnesses had an independent basis for their in-court identifications and that the admission of their identifications was not reversible error.

Defendant also claims that the trial court abused its discretion by failing, upon request, to sequester the witnesses at defendant's mid-trial hearing on the constitutionality of the pre-trial identification procedures. Requests to sequester witnesses should ordinarily be granted, *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971), *People v Hall,* 48 Mich 482; 12 NW 665 (1882). However, defendant has not demonstrated that any prejudice resulted from the denial of his motion to sequester and this is not a case in which we are prepared to presume prejudice, *cf., People v Cutler,* 73 Mich App 313; 251 NW2d 303 (1977). After a review of the record, we find that any error in the judge's ruling was harmless, see *People v Erb,* 48 Mich App 622; 211 NW2d 51 (1973), *People v Insley,* 36 Mich App 593; 194 NW2d 20 (1971).

The trial judge did not err in allowing the prosecutor to introduce evidence in rebuttal showing that defendant was clean shaven two months before the offense occurred. The introduction of this rebuttal evidence tended to refute evidence introduced by the defendant which indicated that he was growing a beard as early as two months before the offense. The issue of whether the defendant was clean shaven on the date of the offense was crucial to the witnesses' identification of the defendant and testimony on this issue was introduced in the prosecutor's case-in-chief. Evidence that the defendant was clean shaven approximately two months before the offense would have been merely cumulative of the evidence that the defendant was clean shaven on the date of the offense until the defendant introduced evidence that he had a beard on the date of the offense and for approximately two months prior to the robbery. After the defendant introduced evidence that he had a beard on the date of the robbery and as early as October of that year, it was not improper for the prosecutor to introduce evidence in rebuttal showing that the defendant was clean shaven approximtely two months before the offense occurred, see *People v Utter,* 217 Mich 74; 185 NW 830 (1921).

Finally, defendant claims that reversal is required because the prosecutor interjected irrelevant considerations in cross-examining the defendant and in his closing argument which denied defendant a fair trial. The defendant did not object at trial or request any curative instructions. Therefore, reversal is not required if a cautionary instruction could have cured any prejudice, *People v Hall,* 396 Mich 650; 242 NW2d 377 (1976). Also, since defendant did not object to the prosecutor's

cross-examination of the defendant, reversal is required only if the questioning would have resulted in a miscarriage of justice, *People v Baldwin,* 74 Mich App 700; 254 NW2d 619 (1977). After a review of the record and reading the prosecutor's closing argument as a whole, see *People v Cadwell,* 78 Mich App 690; 261 NW2d 1 (1977), we conclude that no miscarriage of justice resulted and that any prejudice caused by the prosecutor's closing arguments could have been eliminated by a cautionary instruction.

Defendant's conviction is affirmed.