*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT LEE NEVILLS, JR.,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2026
2:30 PM

No. 366914
Berrien Circuit Court
LC No. 2021-002741-FC

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a) and (2)(b) (victim under 13 years of age, defendant 17 years of age or older), and two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a) and (2)(b) (victim under 13 years of age, defendant 17 years of age or older). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 100 years' imprisonment for each of the first-degree criminal sexual conduct convictions and 25 to 60 years' imprisonment for each of the second-degree criminal sexual conduct convictions. We affirm.

## I. FACTUAL BACKGROUND

This case arises from allegations that defendant sexually assaulted ZS, who lived next door to defendant on Union Avenue in Benton Harbor, Michigan, between September 18, 2017, and September 18, 2019. ZS testified that, when she was 10 or 11 years old, she frequently visited defendant's home. Vania Jackson, defendant's roommate and former girlfriend, was ZS's care provider. Jackson babysat ZS, braided her hair, and allowed ZS to play with her grandchildren. According to ZS, the first assault occurred when she went to Jackson's house for a hair-braiding appointment. Jackson briefly left to pay a bill, and defendant offered ZS a bottle of water. ZS testified that she became sleepy after drinking the water and fell asleep on the couch. She awoke to defendant kissing her feet, touching her thighs and breasts under her clothing, and digitally penetrating her vagina. ZS testified that the conduct stopped when Jackson returned. ZS stated that she did not say anything about the incident because she was frightened.

-1-

ZS further testified that a second assault occurred a few days later when she again went to defendant's home, expecting Jackson to take her to a park. According to ZS, Jackson was not present. Defendant invited her inside, instructed her to remove her clothing, and placed her on a mattress in the living room, where he penetrated her vagina with his penis. ZS testified that defendant then moved her to a bedroom, applied oil to her buttocks, and again penetrated her vagina with his penis from behind. She stated that defendant stopped when he heard Jackson returning and told her to dress and leave.

ZS did not report the allegations until June 2021, when she was 13 years old. ZS's mother discovered ZS with sex toys and ZS then disclosed that defendant had sexually assaulted her. The prosecution initially charged defendant using a narrower 2020 time frame, but after ZS testified at the preliminary examination that she had been 10 or 11 at the time of the assaults, the prosecutor amended the information to allege that the offenses occurred between September 18, 2017, and September 18, 2019.

At trial, the defense theory was that ZS was not credible, her disclosure was motivated by a desire to deflect attention from her own conduct, and the broad time frame made it difficult to defend the case. Defendant and Jackson testified that defendant did not move into the Union Avenue address until November 2018. But Jackson did agree sometime in 2019 ZS came over to have her hair braided and Jackson left briefly to pay a bill. Defendant likewise testified that he had no reason to dispute Jackson's testimony that ZS was at the house in 2019.

Defendant was ultimately convicted by a jury and sentenced as earlier described. Defendant thereafter commenced this appeal. He then moved in the trial court for a new trial, an evidentiary hearing, or resentencing. He argued that his trial counsel was ineffective for failing to object to testimony from Brook Thomas, a forensic examiner who interviewed ZS at the Child Advocacy Center of Southwest Michigan (CAC). He further argued that his 25-year mandatory minimum sentences under MCL 750.520b(2)(b) were unconstitutionally cruel or unusual punishment. The trial court denied defendant's motion.

When defendant filed his original brief on appeal, he also filed a motion to seal the forensic-interview transcript, which he had appended to his brief. This Court denied the motion and struck defendant's appendices because they constituted an improper expansion of the record on appeal, without prejudice to defendant filing a new motion to seal if the forensic-interview transcript later became part of the record and was accepted for filing by this Court as an appendix. *People v Nevills*, unpublished order of the Court of Appeals, entered July 30, 2024 (Docket No. 366914). Defendant applied for leave to appeal in our Supreme Court, which denied the application. *People v Nevills*, 13 NW3d 305 (Mich, 2024).

Meanwhile, defendant filed an amended brief on appeal as well as a motion to remand for further factual development regarding most of the issues he raised on appeal. Defendant suggested that the exhibits stricken by this Court's July 30, 2024 order were relevant to some of the issues. This Court then remanded the case to the trial court to admit the previously stricken exhibits into the record. *People v Nevills*, unpublished order of the Court of Appeals, entered November 8, 2024 (Docket No. 366914). On remand, the trial court admitted those documents into the record, as directed by this Court. Following remand and supplementation of the record, the case is now before this Court for review of defendant's claims of error.

## II. ANALYSIS

## A. ALIBI

Defendant first argues that the trial court violated his right to present a defense by excluding his alibi witness. He also maintains that the amended information failed to provide constitutionally adequate notice of the charged offenses and that defense counsel was ineffective in connection with both matters. We conclude that no relief is warranted.

To preserve an argument that a constitutional due-process right was violated, a defendant must present that argument in the trial court. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). An objection on one ground is insufficient to preserve an appellate challenge on a different ground. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Defendant did not raise his constitutional due-process arguments below. At the preliminary examination, defense counsel asserted "[j]ust a general objection" to amending the felony information in light of ZS's preliminary-examination testimony that she was 10 or 11 years old when the sexual assaults occurred. Defense counsel did not assert any constitutional claim regarding a lack of notice of the dates of the offenses. Also, defendant filed a notice of alibi defense and a response to the prosecutor's objection to defendant's notice of alibi and argued at the beginning of trial that the alibi notice was timely, but defendant did not argue that the alleged preclusion of his alibi defense violated his due-process right to present a defense. Defendant's due-process arguments are thus unpreserved.

"Appellate review of unpreserved constitutional claims is for plain error affecting the defendant's substantial rights." *King*, 297 Mich App at 472. Under the plain-error standard, a defendant must show that an error occurred, it was clear or obvious, and it affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is required only if the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 763-764.

To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther*[1] evidentiary hearing filed in the trial court or in this Court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant raised this ineffective-assistance claim in his motion to remand. That issue is therefore preserved.

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *Heft*, 299 Mich App at 80. Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*. However, because this Court did not grant defendant's motion to remand and no *Ginther* hearing was held, our review is based on the existing record, *Abcumby-Blair*, 335 Mich App at 227, which has been supplemented by the documents that the trial court admitted into the record on remand.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-3-

A criminal defendant has a constitutional due-process right to present a defense. *People v King*, 297 Mich App at 473-474. However, that right is not unlimited and is subject to reasonable restrictions, including compliance with rules of procedure and evidence designed to ensure fairness and reliability. *Id*. A state rule violates the constitutional right to present a defense only if the rule is arbitrary or disproportionate to its purpose. *Id*. "[T]he right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted).

MCL 768.20(1) requires a defendant intending to present an alibi defense to file written notice, generally within 15 days after arraignment but not less than 10 days before trial. Although the statute's plain language references the 15-day period, this Court has long construed the provision to require only that the notice be filed at least 10 days before trial to avoid constitutional concerns. *People v Bennett*, 116 Mich App 700, 703-707; 323 NW2d 520 (1982); see also *People v Hill*, 88 Mich App 50, 56-58; 276 NW2d 512 (1979); *People v Merritt*, 396 Mich 67; 238 NW2d 31 (1976).

Here, defendant waived arraignment[2] on March 1, 2022, and filed an alibi notice on May 20, 2022, more than 10 days before his trial began on July 7, 2022. The trial court nonetheless excluded the alibi witness as untimely under the 15-day provision. The prosecutor now concedes that, under controlling caselaw, the notice was timely. Even so, defendant has not established a due-process violation or outcome-determinative error. Despite the trial court's ruling, the alibi witness, Jackson, testified that she and defendant did not move to the Union Avenue residence until November 2018. Defendant offered similar testimony. Thus, defendant was ultimately permitted to present the substance of his purported alibi.

That evidence, however, did not account for the full charging period. The amended information alleged that the charged offenses occurred between September 18, 2017, and September 18, 2019. Jackson's testimony acknowledged that ZS was present in the home in 2019, and defendant did not dispute that possibility. Accordingly, the testimony failed to establish that defendant lacked access to ZS throughout the charged timeframe and did not establish a true alibi. On this record, defendant has not demonstrated that the trial court's erroneous exclusion of the alibi notice affected the outcome of the proceedings or otherwise deprived him of a meaningful opportunity to present a defense. Accordingly, defendant has not established plain error warranting relief.

Defendant's related argument that the amended information failed to provide constitutionally adequate notice likewise lacks merit. Due process requires that a defendant receive fair notice sufficient to prepare a defense. *People v Bailey*, 310 Mich App 703, 716; 873 NW2d 855 (2015). An information must state the time of the offense "as near as may be," and variance as to time is not fatal unless time is of the essence. MCL 767.45(1)(b). In child CSC cases, time is not of the essence, and imprecise time allegations are permissible given a child victim's difficulty recalling exact dates. *People v Dobek*, 274 Mich App 58, 83; 732 NW2d 546 (2007); *Bailey*, 310 Mich App at 717. ZS testified at the preliminary examination that the offenses

---

[2] A waiver of arraignment is treated as the arraignment for the purpose of MCL 768.20(1). *Bennett*, 116 Mich App at 704 n 1.

occurred when she was 10 or 11 years old, and the trial court permitted amendment of the information to reflect that timeframe. Defendant was on notice of the amendment, did not articulate prejudice, and the resulting date range from September 18, 2017, to September 18, 2019 was permissible under *Bailey*. Defendant has therefore failed to establish a due-process violation.

Defendant's ineffective-assistance claim fails on this point. "To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). Because defendant received adequate notice, any objection on that ground would have been meritless. Counsel is not ineffective for failing to raise futile arguments. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, defendant has not shown entitlement to relief on this issue.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant additionally argues that trial counsel was ineffective for failing to object to forensic interviewer Thomas's expert testimony on the ground that it was based on inadmissible hearsay and constituted impermissible vouching for ZS's credibility. We disagree.

Defendant first asserts that Thomas's testimony was based on inadmissible hearsay, relying on *People v Douglas*, 496 Mich 557, 569; 852 NW2d 587 (2014). In *Douglas*, the forensic interviewer testified to the substance of the child's statements and opined that the child was truthful and had not been coached, and the jury viewed a recording of the interview. *Id*. at 570-571. Our Supreme Court held that the child's statements constituted inadmissible hearsay. *Id*. at 573-579. Here, in contrast, Thomas did not testify to the substance of any statements made by ZS. Rather, her testimony focused on the general forensic-interview process and protocols. Although she testified that she interviewed ZS and described ZS's demeanor, she did not recount any statements by ZS. Thus, unlike in *Douglas*, the jury was not presented with the substance of ZS's out-of-court statements through Thomas.

Nor did Thomas impermissibly vouch for ZS's credibility. "[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *Id*. at 583 (quotation marks and citation omitted). Thomas offered no such opinion. Defendant contends that Thomas testified that she established that ZS understood the difference between truth and lies. But Thomas merely described, in general terms, that interviewers ask such questions as part of the protocol. Although she testified that she followed that protocol in interviewing ZS, she did not testify regarding ZS's responses or suggest that ZS demonstrated an ability to distinguish truth from falsehood.

Defendant also argues that Thomas improperly "explained away" inconsistent statements and delayed disclosures as indicative of sexual abuse. The record does not support that characterization. Thomas testified that delayed disclosure and inconsistent reporting may occur for various reasons, including the child's relationship with the offender, embarrassment, or fear of consequences. She did not testify that such behaviors make an allegation more likely to be true;

rather, she explained that they do not necessarily undermine an allegation's validity. This testimony was proper. See *People v Peterson*, 450 Mich 349, 373; 537 NW2d 857 (1995), amended in part 450 Mich 1212 (1995); *People v Muniz*, 343 Mich App 437, 443; 997 NW2d 325 (2022).

Defendant further contends that the jury could infer the substance of ZS's statements from Thomas's testimony. There is no record support for that claim.

Because Thomas's testimony was properly admitted, any objection would have been futile. Counsel was not ineffective for failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, on cross-examination, defense counsel elicited favorable testimony, including that false allegations of sexual abuse can arise from ulterior motives, such as revenge or a desire to conceal the accuser's own misconduct. Defendant's claim thus fails.

## C. IMPEACHMENT EVIDENCE

Defendant argues that the trial court erred by preventing defense counsel from impeaching ZS with prior statements she made to her mother. The prosecutor concedes that defense counsel should have been permitted to pursue this line of questioning but contends that any error was not outcome-determinative. We agree.

To preserve a challenge to the exclusion of evidence, a party must make an offer of proof unless the substance of the evidence was apparent from the context of questioning. *People v Snyder*, 462 Mich 38, 42-43; 609 NW2d 831 (2000). Defendant preserved the evidentiary issue because it was apparent from the questioning and counsel's exchanges with the court that he sought to lay a foundation to impeach ZS with prior statements made to her mother. However, to preserve a Confrontation Clause claim, a defendant must raise it in the trial court. *People v Gaines*, 306 Mich App 289, 306; 856 NW2d 222 (2014). Defendant did not do so; thus, the constitutional issue is unpreserved.

The trial court's evidentiary rulings are reviewed for an abuse of discretion. *Id*. An abuse of discretion occurs when a trial court's ruling falls outside the range of principled outcomes. *King*, 297 Mich App at 472. Any preliminary questions of law are reviewed de novo. *Id*. "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. Because the constitutional issue is unpreserved, it is reviewed under the plain-error standard. *Gaines*, 306 Mich App at 306.

The Confrontation Clause guarantees a defendant the right to cross-examine witnesses, but that right is not unlimited. US Const, Am VI; Const 1963, art 1, § 20; *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). A defendant is entitled only to a reasonable opportunity to test a witness's credibility. *People v Hackett*, 421 Mich 338, 347; 365 NW2d 120 (1984).

At the time of trial,[3] MRE 613(b) required that, before introducing extrinsic evidence of a prior inconsistent statement, the witness be given an opportunity to explain or deny the statement. As our Supreme Court has explained, the proponent must first elicit inconsistent testimony, then ask the witness to admit or deny both statements, allow an explanation, and permit cross-examination. *Barnett v Hidalgo*, 478 Mich 151, 165; 732 NW2d 472 (2007). "Inconsistent out-of-court statements of a witness are admissible only for impeachment purposes and, since they would otherwise be hearsay, cannot be used as substantive evidence of the truth of the matter asserted." *People v Kohler*, 113 Mich App 594, 599; 318 NW2d 481 (1981).

On direct examination, ZS described two incidents of sexual assault. On cross-examination, defense counsel attempted to ask whether ZS had told her mother that there were two incidents. The prosecutor objected on hearsay grounds, and defense counsel responded that the question was not offered for its truth, but instead to establish a foundation for impeachment. The trial court sustained the objection, finding no proper foundation. Defense counsel made a similar attempt regarding ZS's omission of a detail about how she drank water and fell asleep before one of the assaults. Again, the court sustained the prosecutor's hearsay objection, characterizing the inquiry as "fishing."

On appeal, defendant contends that counsel was attempting to lay the foundation required by MRE 613(b) to later impeach ZS with extrinsic evidence, i.e., her statements to her mother. Defendant asserts that ZS told her mother there was only one incident and did not mention the water bottle, rendering her trial testimony inconsistent. The prosecutor concedes that this line of questioning "likely should have been allowed" because it was directed at impeachment, not hearsay. Even so, the prosecutor maintains that any error was not outcome-determinative because a significant amount of evidence established defendant's guilt. The prosecutor also notes that, in her forensic interview, which was not admitted at trial but is now part of the record (as defendant requested), ZS explained that she was trying to tell her mother everything about the abuse but decided not to do so after seeing her mother's face and reaction. The prosecution notes that it could have used redirect examination to ask ZS why she did not initially tell her mother about being assaulted on two separate occasions.

Defendant's position is well taken. The trial court should have permitted counsel to pursue these questions to lay a foundation for impeachment. But the prosecutor is correct that any errors on this point were not outcome-determinative. The prosecution presented circumstantial evidence corroborating ZS's account, including her familiarity with defendant's home and knowledge of details consistent with her allegations. In addition, expert testimony explained that delayed or incomplete disclosures are not uncommon in child sexual abuse cases. Further, the record indicates that ZS provided an explanation during her forensic interview for not fully disclosing the incidents to her mother. Accordingly, any errors in preventing defense counsel from laying a foundation for impeachment of ZS were not outcome-determinative. Defendant is thus not entitled to reversal.

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxxxvii (2023). This opinion relies on the versions of the rules of evidence in effect at the time of trial.

## D. EXCLUSION OF EVIDENCE

Defendant argues that the trial court committed an evidentiary error and violated his constitutional right of confrontation by precluding cross-examination of ZS regarding an explicit picture she received from an adult man. We disagree.

To preserve a challenge to the exclusion of evidence, a party must make an offer of proof unless the substance of the evidence is apparent from the context. *Snyder*, 462 Mich at 42-43. During cross-examination, defense counsel asked whether ZS had "received some inappropriate Instagram photos." The prosecutor objected on relevance and rape-shield grounds. Defense counsel responded only that the photos "triggered the reporting." The trial court sustained the objection. On appeal, defendant asserts that the evidence was relevant to show that ZS had a motive to deflect attention and possessed age-inappropriate sexual knowledge. However, these theories were not articulated at trial. An objection on one ground does not preserve a different appellate theory. *Kimble*, 470 Mich at 309. Thus, the evidentiary issue is unpreserved.

Likewise, to preserve an argument regarding a violation of the constitutional right of confrontation, a defendant must raise that argument in the trial court. *Gaines*, 306 Mich App at 306. Defendant did not present his constitutional argument in the trial court. The constitutional issue is therefore unpreserved. Unpreserved issues are reviewed under the plain-error standard. *Carines*, 460 Mich at 763.

The Confrontation Clause guarantees the right to cross-examination, including inquiry into bias or credibility, but does not extend to irrelevant matters. *Gaines*, 306 Mich App at 315-316. Trial courts retain wide latitude to impose reasonable limits, particularly where questioning is only marginally relevant. *Id*. Only relevant evidence is admissible. MRE 402. At the time of trial, MRE 401 provided, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." But even relevant evidence is subject to exclusion under MRE 403, which, at the time of trial, provided: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Defendant has not shown a clear or obvious error. Defense counsel's stated basis for admission, namely that the photos "triggered the reporting", did not establish relevance. Nor did counsel argue that the evidence showed deflection or age-inappropriate knowledge. The theories now advanced on appeal were not presented to the trial court. Moreover, those theories are speculative. There is no evidentiary basis to conclude that ZS fabricated allegations to deflect attention from receiving explicit images. At most, the proposed inquiry was marginally relevant,

and the trial court acted within its discretion in limiting cross-examination. *Gaines*, 306 Mich App at 316.[4]

Even assuming arguendo that error occurred, defendant has not demonstrated outcome prejudice. The record contained circumstantial support for ZS's testimony, and defense counsel was able to argue a deflection theory based on other evidence, including that ZS disclosed abuse after being discovered using her mother's sex toys. Defendant has not shown that the excluded cross-examination would have affected the verdict. Defendant is therefore not entitled to relief.

### E. JUDICIAL IMPARTIALITY

Defendant argues that the trial court pierced the veil of judicial impartiality through frequent, sustained, and one-sided interruptions and commentary. We disagree.

To preserve an issue of judicial misconduct, a defendant must object on that basis in the trial court. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). As defendant concedes, he did not raise this issue below, and it is thus unpreserved. Unpreserved issues of judicial misconduct are reviewed under the plain-error standard. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).[5]

The defendant bears a heavy burden to overcome the presumption of judicial impartiality. *People v Biddles*, 316 Mich App 148, 152; 896 NW2d 461 (2016). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). Relevant considerations include the nature, tone, and scope of the conduct, whether it was directed disproportionately at one side, and the presence of curative instructions. *Id.*; *Biddles*, 316 Mich App at 152. "A single instance of misconduct generally does not result in the appearance that a trial judge is biased, unless the instance is 'so egregious that it pierces the veil of impartiality.' " *Biddles*, 316 Mich App at 152, quoting *Stevens*, 498 Mich at 171.

"It is well established that the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty." *Biddles*, 316 Mich App

---

[4] In light of the preceding analysis regarding the lack of relevance of the evidence regarding the pictures, it is unnecessary to address whether the evidence was also barred by the rape-shield statute, MCL 750.520j. Any reliance by the trial court on the rape-shield statute does not alter the fact that the trial court reached the correct result on the separate ground that the evidence was irrelevant, and reversal is thus not required. See *People v Hawkins*, 340 Mich App 155, 195; 985 NW2d 853 (2022) ("This Court will not reverse when a lower court reaches the right result for the wrong reason.").

[5] Defendant argues that the prejudice prong of the plain-error standard is automatically satisfied because this issue involves a structural error. As will be explained, we conclude that the veil of judicial impartiality was not pierced, thus making it unnecessary to address the prejudice prong.

at 153. Although the constitutional right of confrontation includes the right to cross-examine witnesses, "a court has wide latitude to impose reasonable limits on cross-examination to ensure relevancy or because of concerns regarding such matters as harassment, prejudice, confusion of the issues, and repetitiveness." *Id*.

Defendant first contends that the trial judge displayed bias during opening statements by restricting defense counsel's discussion of the presumption of innocence. The record, viewed in context, does not support this claim. Before voir dire, the court instructed counsel that it alone would instruct on the law and that counsel should avoid legal hypotheticals. During opening statements, when defense counsel began discussing reasonable doubt and the presumption of innocence through a hypothetical, the court reminded counsel of this limitation and directed him to focus on the facts. Defense counsel nevertheless was permitted to repeatedly emphasize the presumption of innocence and burden of proof. The court's intervention was consistent with its earlier directive and did not reflect bias.

Defendant next argues that the court's interruptions during cross-examination demonstrated partiality. Many of these assertions lack citation or development and are therefore abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."). For example, defendant cites the court's comment that counsel was "fishing," but that remark occurred during a broader evidentiary exchange following an objection, not as an unsolicited interruption, and defendant offers no explanation as to why the term reflects bias. Defendant has therefore not properly presented this aspect of his argument. *Id*. Similarly, defendant asserts that the court answered questions for witnesses or corrected testimony but provides no record support. He may not leave it to this Court to search for factual bases for his argument. *Id*.

Defendant also mischaracterizes an exchange in which the court stated there was "no evidence" of certain FBI involvement. That discussion arose during a relevance objection and did not concern any alleged exchange of explicit images. Moreover, the forensic interview to which defendant refers was not admitted, and defendant provides no citation supporting his claim that such admissions occurred. In any event, nothing in the exchange suggests bias.

Defendant further challenges a statement by the trial court in which the court admonished defense counsel to "stop interrupting" during the prosecutor's cross-examination of defendant. This remark followed successive objections that the court had overruled. Although the phrasing would have been better left unsaid, it was an isolated comment that did not rise to the level of influencing the jury. See *Biddles*, 316 Mich App at 152-153.

Defendant also argues that the court's tone, particularly an instance in which the court referred to ZS as "emotional", demonstrated sympathy for the complainant over defendant. However, the record shows that the court used that term while summarizing the sequence of questioning and explaining its ruling during a contentious exchange. At no point did the trial court express sympathy for ZS or endorse her credibility as a witness.

As a further challenge to the trial judge's tone and demeanor, defendant complains that the judge "repeatedly told trial counsel to 'move on.' " Generally, "a trial judge's comment that is critical of or hostile to a party or his or her counsel is not sufficient to pierce the veil of judicial impartiality." *People v Willis*, 322 Mich App 579, 590; 914 NW2d 384 (2018). "A trial judge's rulings or opinions do not pierce the veil of judicial impartiality unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Id*. (quotation marks and citation omitted). Defendant cites two pages of the trial transcript in which the judge directed defense counsel to "move on" after the judge ruled that certain questions were improper. The judge was properly acting in accordance with his discretion and power to control the proceedings. *Biddles*, 316 Mich App at 153-154. Even if arguably curt, these statements do not establish the deep-seated favoritism or antagonism required to pierce the veil of impartiality. *People v Willis*, 322 Mich App 579, 590; 914 NW2d 384 (2018).

Regarding the scope and extent of the judicial conduct, defendant notes that the trial lasted only two days. He says that the frequency of judicial interventions points toward unacceptable bias. He also asserts that the judge did not interrupt the prosecutor,[6] thereby indicating that the veil of judicial impartiality was pierced. Here, the judge properly asserted his judicial authority to control the proceedings. Defendant has successfully identified only one instance in which the judge made an inappropriate choice of words, and that isolated instance did not improperly influence the jury. It is true that the judge intervened to provide clarifications more often during defense counsel's questioning as compared to the prosecutor's questioning, but that alone does not establish judicial bias. Defendant fails to address the possibility that more clarifications were needed during defense counsel's questioning.

Finally, the trial judge's instructions to the jury weigh against defendant's argument that the veil of judicial impartiality was pierced. The judge repeatedly instructed the jury that its rulings, comments, and questions did not reflect any opinion on the facts and that the jury alone was to decide the case. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Boshell*, 337 Mich App 322, 353; 975 NW2d 72 (2021) (quotation marks and citation omitted).

Considering the totality of the circumstances, defendant has not overcome the presumption of judicial impartiality. The trial court's conduct reflects permissible control of the proceedings rather than advocacy or partiality. Accordingly, defendant has not established plain error.

### F. CUMULATIVE ERROR

Defendant argues that he was denied a fair trial because of the cumulative effect of errors. We disagree.

---

[6] Defendant goes so far as to say that the trial judge "did not interrupt the prosecutor at all." That is inaccurate. Although there were certainly more judicial interjections during defense counsel's questioning, the judge also spoke up during the prosecutor's questioning to provide clarifications or corrections.

This Court reviews a cumulative-error "issue to determine if the combination of alleged errors denied defendant a fair trial." *Dobek*, 274 Mich App at 106. The cumulative-error doctrine applies only when more than one actual error occurred. *Id*.; see also *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). Any errors that occurred in this matter were minimal and did not cause prejudice. Because defendant has not established multiple errors, there can be no cumulative effect warranting reversal. *Dobek*, 274 Mich at 106.

## G. CRUEL OR UNUSUAL PUNISHMENT

Lastly, defendant argues that his 25-year mandatory minimum sentences under MCL 750.520b(2)(b) are unconstitutionally cruel or unusual. We disagree.

"We review issues of constitutional law de novo." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). "Statutes are presumed to be constitutional, and the party challenging the statute has the burden of showing to the contrary." *People v Lymon*, 515 Mich 145, 159; 29 NW3d 58 (2024).

"The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII." *Benton*, 294 Mich App at 204. "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id*. (quotation marks and citation omitted). "[U]nder the Michigan Constitution, the prohibition against cruel or unusual punishment include[s] a prohibition on grossly disproportionate sentences." *Id*. A reviewing court should consider "(1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Id*. A fourth factor is "whether the penalty imposed advances the goal of rehabilitation." *Lymon*, 515 Mich at 183.

In *Benton*, 294 Mich App at 204-207, this Court held that the defendant's 25-year mandatory minimum sentences under MCL 750.520b(2)(b) were not unconstitutionally cruel or unusual. This Court noted that the statute reflects Michigan public policy to protect children under a certain age from sexual exploitation. *Benton*, 294 Mich App at 205. This public policy undercut the defendant's attempt to minimize the gravity and severity of her offenses. *Id*. at 205-206. This Court rejected the defendant's argument that the 25-year mandatory minimum sentence was unduly harsh compared to the penalties for other Michigan offenses. *Id*. at 206. This Court stated:

> We are not persuaded that these comparisons render the 25-year minimum sentence disproportionate to the offense. The perpetration of sexual activity by an adult with a preteen victim is an offense that violates deeply ingrained social values of protecting children from sexual exploitation. Even when there is no palpable physical injury or overtly coercive act, sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences. The unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether the mandatory 25-year minimum sentence is unduly harsh. [*Id*.]

The Court also rejected interstate comparison arguments, noting that multiple states impose comparable mandatory minimum sentences for similar offenses. *Id*. at 206-207. More recently, this Court has reaffirmed that *Benton* is binding. See *People v Sattler-VanWagoner*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362433); slip op at 7 (recognizing that, under MCR 7.215(J)(1), this Court must follow *Benton*). In light of *Benton*, defendant's constitutional challenge fails.

Moreover, defendant does not meaningfully engage with *Benton* or explain why it should not control the analysis in this case. Our Court has continued to adhere to *Benton* on challenges to the constitutionality of MCL 750.520b(2)(b). See *Sattler-VanWagoner*, ___ Mich App at ___; slip op at 7. Yet in challenging defendant's sentence on these same constitutional grounds, defense counsel does not cite *Benton* (*Sattler-VanWagoner* was issued a few months after defendant's brief was filed). Instead, defendant relies on discretionary acts of former presidential administrations, an article from a general-circulation periodical, a concurring opinion to an unpublished opinion, and policy articles advocating for nonmandatory sentences. In other words, defendant cites advocacy pieces, but not the controlling law in Michigan. Although counsel is certainly entitled to make a good-faith argument for the extension or reversal of the law, MRPC 3.1, counsel also has a duty to disclose controlling legal authority to this Court. MRPC 3.3(a)(2). Defendant also does not cite the standards governing a challenge to the constitutional validity of a state statute, which are difficult to overcome. See, e.g., *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021) ("Legislatively mandated sentences are presumptively proportional and presumptively valid. In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate. Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent.") (quotation marks and citations omitted).

At oral argument before this Court, counsel asserted that *Benton* was not addressed because defendant was raising an as-applied challenge. But defendant's brief contains no mention of an as-applied challenge, which "considers the specific application of a facially valid law to individual facts." *Promote the Vote v Secretary of State*, 333 Mich App 93, 117; 958 NW2d 861 (2020). Instead, defendant relies on the four-part test used to facially challenge a statutory punishment as cruel or unusual. See *People v Carp*, 496 Mich 440, 520; 852 NW2d 801 (2014). That is the same test *Benton* applied. See *Benton*, 294 Mich App at 204. Nor does defendant identify facts particular to this case, other than his age, that would support an as-applied challenge. Accordingly, defendant did not actually present an as-applied challenge.[7]

Defendant also contends that his sentences are excessive given his age, asserting that he will not be eligible for parole until age 86 and thus effectively received a "death-in-prison sentence." This argument is unpersuasive. In *People v Purdle (On Remand)*, ___ Mich App ___,

---

[7] In making future arguments, counsel should keep in mind that he is advocating in a court of law, not to a legislative body with free reign over policy matters. Moreover, ignoring controlling precedent helps neither counsel nor client. See *Gonzalez-Servin v Ford Motor Co*, 662 F3d 931, 934 (CA 7, 2011).

-13-

___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 5, this Court rejected a similar claim, explaining that a term-of-years sentence is not equivalent to a death sentence and that the seriousness of the offense is not diminished by the defendant's age. The same reasoning applies here: defendant received a term-of-years sentence, and his age does not lessen the gravity of his offenses.[8]

Finally, defendant asserts that he had not been convicted of a crime in 40 years before the instant offenses. The record refutes this claim. At the August 30, 2022 sentencing hearing, defendant acknowledged a 1990 conviction for assault with intent to murder, and all prior convictions discussed were within 40 years of sentencing. Even assuming his criminal history was largely remote,[9] that does not diminish defendant's culpability. Indeed, the defendant in *Benton* had no prior criminal record, yet her 25-year mandatory minimum sentences were upheld as constitutional. See *Benton*, 294 Mich App at 205. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

---

[8] Even as to his argument that his parole eligibility age renders his punishment cruel or unusual, defense counsel failed to recognize or address this Court's holding in *Purdle*.

[9] Most of defendant's prior Michigan convictions were in the 1980s or 1990s. However, defendant also had convictions in Nevada related to domestic violence in 2010 and 2014.